# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT WHITELEY and HARRY BERGER, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ZYNERBA PHARMACEUTICALS, INC., ARMANDO ANIDO, and JAMES E. FICKENSCHER,<br><br>    Defendants. | Case No: 2:19-cv-04959-NIQA<br><br>AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Lead Plaintiffs Scott Whiteley and Harry Berger ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants (defined below), allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zynerba Pharmaceuticals, Inc. ("Zynerba" or the "Company"), and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Zynerba securities between March 11, 2019 and September 17, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Zynerba, which does not have FDA approved drug products on the market, operates as a clinical stage specialty pharmaceutical company. It focuses on developing pharmaceutically produced transdermal cannabinoid ("CBD") therapies for rare and near-rare neuropsychiatric disorders.  CBD is the primary non-psychoactive component of Cannabis.

3.      Zynerba has a single product in its pipeline.  Its sole pharmaceutical therapy currently under evaluation is Zygel (fka ZYN002), a transdermal CBD gel, intended for the treatment of Fragile X Syndrome ("FXS"), developmental and epileptic encephalopathies ("DEE"), 22q Deletion Syndrome ("22q"), and Autism Spectrum Disorder ("ASD")—four different progressive neuropsychiatric disorders.  Zynerba initiated a Phase II clinical trial of Zygel in April 2018, called the BELIEVE I Trial, a six-month open label multi-dose clinical trial designed to evaluate the efficacy and safety of Zygel in children and adolescents (ages three to seventeen years) with DEE as classified by the International League Against Epilepsy ("ILAE").

4.      Throughout the Class Period, Defendants issued misleading statements touting Zygel and the BELIEVE I Trial, and representing Zygel as addressing safety issues with current treatment options.  All the while, Defendants failed to disclose that: (i) nearly all patients treated with Zygel in the BELIEVE I Trial suffered treatment emergent adverse events, a majority also suffered treatment related adverse events and more than one fifth suffered serious adverse events;

and (ii) the foregoing created a heightened risk to the Company's ability to continue developing Zygel and that Zynerba, which has a history of failed trials, would fail to secure the necessary regulatory approvals for commercializing Zygel for the treatment of DEE in children and adolescents.

5.      On September 18, 2019, during pre-market hours, Zynerba issued a press release announcing results from the BELIEVE 1 Trial (the "September 2019 Press Release"). Though patients had been treated with Zygel starting in at the very beginning of 2019, Defendants disclosed for the first time that trial participants suffered treatment emergent adverse events ("TEAEs") at a rate of **96%**, treatment related adverse events ("TRAEs") at a rate of **60%**, and ***ten out of forty eight trial*** patients reported serious adverse events ("SAEs").  On this news, Zynerba's stock price fell $2.46 per share, or 21.77%, to close at $8.84 per share on September 18, 2019.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Zynerba is headquartered in this Judicial

District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

10.   In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11.   Plaintiffs, as set forth in the certifications previously filed with this Court and incorporated by reference herein, acquired Zynerba securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.   Zynerba is a Delaware corporation with principal executive offices located at 80 W. Lancaster Avenue, Suite 300, Devon, PA 19333. Zynerba, founded in 2007, was formerly known as AllTranz, Inc. and changed its name to Zynerba Pharmaceuticals, Inc. in August 2014. The Company's stock trades in an efficient market on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "ZYNE."

14.   Defendant Armando Anido ("Anido") has served as Zynerba's Chairman and Chief Executive Officer at all relevant times.

15.   Defendant James E. Fickenscher ("Fickenscher") has served as Zynerba's Chief Financial Officer at all relevant times.

16.   Defendants Anido and Fickenscher are sometimes referred to herein as the "Individual Defendants."

17.   The Individual Defendants possessed the power and authority to control the contents of Zynerba's SEC filings, press releases, and other market communications. The

Individual Defendants were provided with copies of Zynerba's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Zynerba, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Zynerba is developing and clinically testing Zygel, which it has called its "***lead asset***." ***The Company has no other drugs under development***.  Zygel is a transdermal CBD gel intended to treat, among other things, Developmental and Epileptic Encephalopathy ("DEE") in children and adolescents (ages three to seventeen years).  Zynerba has explained in SEC filings that DEE is a heterogeneous group of epilepsy syndromes, often progressive, that involve significant developmental impairment or regression of developmental progress and are highly resistant to treatment, such as Dravet or Lennox-Gastaut syndrome.  Zynerba has described Zygel is the "first and only patent-protected permeation-enhanced pharmaceutically-produced cannabidiol (CBD) gel formulated for transdermal delivery."

20.     Zynerba has never been profitable and indeed has incurred net losses since inception. The Company's primary source of liquidity has been the issuance of equity securities. Zynerba has made clear that it expects to incur losses for the foreseeable future and expects its losses to increase as it continues developing and seeking regulatory approvals for Zygel.  The

Company has suffered a history of trial failures, most recently announcing in July 2018 that it had decided to discontinue development of ZYN001 following receipt of top line results for its Phase 1 study.  According to its latest Form 10-K for the year ended December 31, 2018, filed on March 11, 2019 (the start of the Class Period), Zynerba only has 25 full time employees.

21.     As with any newly developed drug, in order to obtain approval to market and sell Zygel in the United States, Zynerba must follow FDA rules and regulations regarding clinical testing to prove the drug's safety and efficacy.  This includes human clinical trials that proceed in three phases:

- Phase 1 clinical trials are conducted in a small number of volunteers or patients to assess the early tolerability and safety profile, and the pattern of drug absorption, distribution and metabolism.

- Phase 2 clinical trials are conducted in a limited patient population afflicted with a specific disease in order to assess appropriate dosages and dose regimens, expand evidence of the safety profile, and evaluate preliminary efficacy.

- Phase 3 larger scale, multicenter, well-controlled clinical trials are conducted on patients with a specific disease to generate enough data to statistically evaluate the efficacy and safety of the product for approval, as required by the FDA, to establish the overall benefit-risk relationship of the drug and to provide adequate information for the labeling of the drug.

22.     According to FDA regulations, the FDA must be notified no later than 15 days after learning of a "serious adverse drug experience," which includes any reaction that is fatal, life threatening, or requires in-patient hospitalization or prolongs hospitalization.  If it is an "unexpected" reaction, the FDA must be notified by telephone, facsimile transmission, or in

writing, within 7 calendar days of the receipt of that information.  A complete written report must follow within 8 calendar days.  The FDA considers all the clinical trials results and nonclinical studies in determining whether to approve a drug for market.  *See* 21 C.F.R. §§ 314.125(b), 314.126(a).

23.     Prior to the start of the Class Period, Defendants represented that Zygel had been demonstrated to be safe and well tolerated in Phase 1 clinical testing.  Defendants issued a press release on April 10, 2018 announcing that the Company had initiated the Phase 2 BELIEVE 1 trial, a six-month open label multi-dose clinical trial designed to evaluate the efficacy and safety of Zygel in children and adolescents with DEE.  An open-label trial, as opposed to one that is blind or double-blind, is one in which both the researchers and trial patients know which treatment the patient is receiving.  The Company maintained a Zygel safety database tracking safety events during clinical testing of Zygel.

24.     Zynerba enrolled less than fifty patients in the trial with a primary efficacy endpoint of changing seizure frequency and an additional endpoint of safety measured by adverse events.  The Company conducted the BELIEVE 1 trial study in Australia and New Zealand.  On December 17, 2018, the Company announced that had completed enrollment in the BELIEVE 1 study and that it would report top line results in the third quarter of 2019.

25.     The Company explained that patients enrolled in the trial would complete a four week baseline period to determine seizure frequency, receive a daily 250 mg to 500mg daily weight based dose of Zygel for a two week period, and the receive 250 mg to 1,000 mg daily maintenance doses for the following 24 weeks.

**Materially False and Misleading Statements Issued During the Class Period**

26.     Throughout the March 11, 2019 to September 17, 2019 Class Period, Zynerba represented on its website that Zygel "address[es] limitations of current treatments." Specifically, among other claims, Defendants represented that compared to oral administration of CBD, Zygel "result(s) in a lower incidence of gastrointestinal side effects…" and "transdermal delivery of Zygel avoids the gastrointestinal tract and potential degradation to THC in stomach acid, which should minimize the risk of negative psychoactive effects."

27.     In opting to discuss Zygel's safety as compared to other treatment options, Defendants failed to disclose that almost all patients enrolled in the BELIEVE I Trial suffered treatment emergent adverse events, a majority also suffered treatment related adverse events, and more than one fifth suffered serious adverse events, thus triggering a heightened risk to continued development of Zygel and the Company's prospects for obtaining regulatory approval to market Zygel for the treatment of DEE in children and adolescents.

28.     In addition to the misrepresentations on Zynerba's website, Defendants also misled the market regarding Zygel and the BELIEVE I Trial in SEC filings and presentations to investors throughout the Class Period.

29.     On March 11, 2019, Zynerba filed an Annual Report on Form 10-K with the SEC for the quarter and year ended December 31, 2018, signed by Defendants Anido and Fickenscher (the "2018 10-K"). With respect to the BELIEVE 1 Trial, the 2018 10-K stated, in relevant part:

> In April 2018, we initiated the Phase 2 BELIEVE 1 (Open Label Study to Assess the Safety and Efficacy of Zygel Administered as a Transdermal Gel to Children and Adolescents with Developmental and Epileptic Encephalopathy) clinical trial, a six-month open label multi-dose clinical trial designed to evaluate the efficacy and safety of Zygel in children and adolescents (three to 17 years) with DEE as classified by the International League Against Epilepsy (ILAE) (Scheffer et al. 2017). Enrollment in this study was complete in December 2018 and 48 patients with confirmed DEE are being dosed in the clinical trial, 27% of whom have

either Dravet or Lennox-Gastaut syndrome. Enrolled patients will receive weight-based initial doses of 250 mg daily or 500 mg daily and during the maintenance phase patients may receive up to 1000 mg daily of Zygel. The primary endpoint is change in seizure frequency from baseline. We expect to report top line results from the BELIEVE 1 trial in the third quarter of 2019.

30.     Additionally, the 2018 10-K touted the purported benefits of CBD for treating patients suffering from DEE, stating, in relevant part:

> We believe that Zygel may provide an effective treatment for epilepsy based on the anticonvulsant effects of CBD due to its ability to reduce neuronal hyperexcitability shown in multiple *in vivo* models of epilepsy and clinical trials conducted by third parties. Epilepsy specialists and patient organizations have shown considerable interest in the potential therapeutic role of CBD in adults with epilepsy and especially, children with DEE.

31.     The 2018 10-K also contained a series of generic boilerplate risks disclosures regarding the potential for poor clinical results, including, but not limited to:

- "***Because the results of preclinical studies and earlier clinical trials are not necessarily predictive of future results, Zygel may not have favorable results in our planned clinical trials.***"

- "***Failures or delays in our clinical trials of Zygel could result in increased costs to us and could delay, prevent or limit our ability to generate revenue and continue our business.***"

- "***The regulatory approval processes of the FDA, the EMA and other comparable foreign regulatory authorities are lengthy, time-consuming and inherently unpredictable, and if we are ultimately unable to obtain regulatory approval for our product candidates, our business will be substantially harmed.***"

(All emphases in original.) These generic risk warnings, common to all pharmaceutical companies with products under development for FDA approval, did not address known risks due to adverse events suffered at devastating rates during the BELIEVE I Trial.

32.     The statements in the 2018 10-K misled investors because, with the two week dosing period for trial patients already complete and maintenance dosing well underway in the ***open label*** BELIEVE I Trial, Defendants knew but failed to disclose that almost all patients

enrolled in the BELIEVE I Trial suffered treatment emergent adverse events, a majority also suffered treatment related adverse events, and more than one fifth suffered serious adverse events, thus triggering a heightened risk to continued development of Zygel and the Company's prospects for obtaining regulatory approval to market Zygel for the treatment of DEE in children and adolescents.

33.     On May 8, 2019, Zynerba filed a Quarterly Report on Form 10-Q with the SEC for the quarter ended March 31, 2019, signed by Defendants Anido and Fickenscher (the "1Q19 10-Q"). The 1Q19 10-Q reiterated substantively the same statements regarding Zygel and the BELIEVE I Trial contained in the 2018 10-K, but additionally confirmed that dosing of trial patients had already received their initial two week titration doses and were in the process of receiving their twenty four weeks of maintenance dosing: "Patients ***received*** weight-based initial doses of 250 mg or 500 mg daily and during the maintenance phase patients ***receive*** up to 1000 mg daily of Zygel." (Emphasis added.)

34.     The statements in the 1Q19 10-Q set forth in ¶ 33 mislead investors for the same reasons set forth in ¶ 32.

35.     The 1Q19 10-Q also contained the same generic risk disclosures set forth in the 2018 10-K, which mislead investors for the same reasons set forth above.

36.     On June 7, 2019, Zynerba published a slideshow presentation for investors discussing the multi-billion-dollar market opportunity for Zygel and the BELIEVE 1 Trial. In the slideshow, Defendants confirmed that "dosing continues" and cited a "[c]ompelling rationale for [the] utility of CBD in DEE" based on "[t]hird party clinical data show[ing] [the] impact of CBD on seizures and behavioral issues in children[.]" With respect to the BELIEVE 1 Trial, the slideshow merely stated, in relevant part:

- Patient enrollment in BELIEVE 1 Phase 2 study complete

- Six-month multi-dose study in DEE patients (3 through 17 years)

- Being Conducted in Australia and New Zealand

- Inclusion criteria require ≥5 generalized motor seizures during baseline

- ~27% have Dravet or LGS [Lennox-Gastaut syndrome]

- Primary efficacy assessment: change in seizure frequency

- Top line results expected in 3Q2019

37.    The presentation misled investors for the reasons set forth in ¶ 32.

38.    On August 6, 2019, Zynerba filed a Quarterly Report on Form 10-Q with the SEC for the quarter ended June 30, 2019, signed by Defendants Anido and Fickenscher (the "2Q19 10-Q"). The 2Q19 10-Q reiterated the same misstatements and generic risk factors set forth in ¶¶ 29-31, 33 above, thus misleading investors for the reasons set forth in ¶¶ 31-32.

39.    The Company also revealed in the 2Q19 10-Q that in the second quarter of 2019, it had sold and issued 2,082,031 shares of common stock under an Open Market Sales Agreement with Jefferies LLC in the open market at a weighted average selling price of $13.50 per share, resulting in gross proceeds of $28.1 million. Net proceeds received after deducting commissions and offering expenses were $ 27 .0 million.  Had the market known about the avalanche of adverse effects suffered during the BELIEVE I trial for Zynerba's only product in development, it might not have been able to achieve $27 million in net proceeds which, with no product revenue, it desperately needed to continue funding its research and development activities.

40.    The same day, Zynerba filed a corporate overview presentation for investors, attached to a Form 8-K, discussing the BELIEVE 1 Trial which reiterated the statements made in the June 7, 2019 presentation and misled investors for the reasons stated in ¶ 32.

41.     Then, on August 12, 2019, Zynerba released yet another slideshow presentation for investors once again reiterating the statements regarding the BELIEVE I Trial contained in the slideshow presentation for investors on June 7, 2019, which misled investors for the reasons stated in ¶ 32.

42.     On August 30, 2019, Zynerba announced that it entered into a Controlled Equity Offering Sales Agreement with Cantor Fitzgerald & Co., Canaccord Genuity LLC, H.C. Wainwright & Co., LLC and Ladenburg Thalmann & Co. Inc., as sales agents, pursuant to which the Company may issue and sell shares of its common stock, par value $0.001 per share, in an aggregate offering price of up to $75.0 million.  Therein the Company repeated its statements regarding the Phase 2 BELIEVE I Trial set forth in ¶¶ 29-30, 33, which mislead investors for the reasons stated in ¶ 32..

43.     The same day, the Company announced that it amended the employment agreements of Defendants Anido and Fickenscher to expand upon the circumstances under which they could obtain severance benefits, which include "base salary continuation and medical and dental insurance continuation."

44.     The statements referenced in ¶¶ 26-42 were materially false and misleading because, with the two week dosing period for trial patients already complete and maintenance dosing well underway in the open label BELIEVE I Trial, Defendants knew but failed to disclose that almost all patients enrolled in the BELIEVE I Trial suffered treatment emergent adverse events, a majority also suffered treatment related adverse events, and more than one fifth suffered serious adverse events, thus triggering a heightened risk to continued development of Zygel and the Company's prospects for obtaining regulatory approval to market Zygel for the treatment of DEE in children and adolescents.

**The Truth Begins to Emerge**

45.     On September 18, 2019, during pre-market hours, Zynerba issued a press release announcing results from the BELIEVE 1 trial. Therein, Zynerba revealed that, among patients enrolled in the BELIEVE 1 Trial and treated with Zygel, the rate of treatment emergent adverse events ("TEAE") was 96% and the rate of treatment related adverse events ("TRAE") was 60%. The Company further reported that ten out of forty-six trial patients reported serious adverse events ("SAE").  Eight patients discontinued the study altogether.

46.     On this news, Zynerba's stock price fell $2.46 per share, or 21.77%, to close at $8.84 per share on September 18, 2019.  The stock has continued its downward spiral and is currently trading at $4.02 (closing price on March 6, 2020).

35.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

36.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Zynerba securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Zynerba securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Zynerba or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs has no interests antagonistic to or in conflict with those of the Class.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Zynerba;

- whether the Individual Defendants caused Zynerba to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Zynerba securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Zynerba securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Zynerba securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United*

*States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

46.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zynerba securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Zynerba securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

above, including statements made to securities analysts and the media that were designed to influence the market for Zynerba securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Zynerba's finances and business prospects.

50.     By virtue of their positions at Zynerba, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Zynerba, the Individual Defendants had knowledge of the details of Zynerba's internal affairs.

52.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Zynerba. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Zynerba's businesses, operations, future financial condition and future prospects. As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Zynerba securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Zynerba's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Zynerba securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

53.     During the Class Period, Zynerba securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Zynerba securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Zynerba securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Zynerba securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

54.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

56.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of Zynerba, and conducted and participated, directly and indirectly, in the conduct of Zynerba's business affairs. Because of their senior positions, they knew the adverse non-public information about Zynerba's misstatement of income and expenses and false financial statements.

58.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Zynerba's financial condition and results of operations, and to correct promptly any public statements issued by Zynerba which had become materially false or misleading.

59.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Zynerba disseminated in the marketplace during the Class Period concerning Zynerba's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Zynerba to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Zynerba within the meaning

of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Zynerba securities.

60.    Each of the Individual Defendants, therefore, acted as a controlling person of Zynerba. By reason of their senior management positions and/or being directors of Zynerba, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Zynerba to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Zynerba and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Zynerba.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class Representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated:  March 9, 2020

Respectfully submitted,

**ROSEN LAW FIRM**

_____

Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046 Telephone:
(215) 600-2817 Facsimile: (212)
202-3827
Email: jgoldberg@rosenlegal.com

**ROSEN LAW FIRM**
Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor New
York, New York 10016 Telephone:
(212) 661-1100 Facsimile: (917)
463-1044
Email:  jalieberman@pomlaw.com
         taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603 Telephone:
(312) 377-1181 Facsimile: (312)
229-8811
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 9th of March, 2020, I filed the foregoing **AMENDED CLASS**

**ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

with the Clerk of Court, which will send notifications of such to all CM/ECF participants.

/s/ *Jacob A. Goldberg*
