**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT WHITELEY and HARRY BERGER, Individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ZYNERBA PHARMACEUTICALS, INC., ARMANDO ANIDO, and JAMES E. FICKENSCHER,<br><br>    Defendants. | Case No: 2:19-cv-04959-NIQA<br><br>Hon. Nitza I. Quiñones Alejandro |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 3

      A.    Procedural History Of The Litigation................................................................. 3

      B.    Summary Of Key Terms Of The Proposed Settlement ........................................ 4

            a)    Notice.................................................................................................... 5

            b)    Administration ...................................................................................... 6

III.  PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
      APPROPRIATE.......................................................................................................... 9

      A.    Standards for Preliminary Approval .................................................................. 9

      B.    That This Settlement Was Negotiated At Arm's Length Between Experienced
            Counsel Supports Preliminary Approval ........................................................... 10

      C.    The *Girsh* Factors Support Preliminary Approval................................................. 13

IV.   THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON
      CERTIFICATION TO PROVIDE NOTICE TO THE PUTATIVE SETTLEMENT
      CLASS ...................................................................................................................... 19

      A.    Numerosity......................................................................................................... 20

      B.    Commonality....................................................................................................... 20

      C.    Typicality ........................................................................................................... 21

      D.    Adequacy ........................................................................................................... 21

            (i)   *Adequacy of the Proposed Class Representatives* ................................. 22

            (ii)  *Rule 23(g) Adequacy of the Proposed Class Counsel* ......................... 22

      E.    Common Questions Predominate and the Class Is Superior to Other Methods of
            Adjudication....................................................................................................... 24

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
      CLASS NOTICE ....................................................................................................... 26

VI.   PROPOSED SCHEDULE OF EVENTS...................................................................... 28

VII.  CONCLUSION.......................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ............................... 10, 12

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................... 19, 25

*Austin v. Pennsylvania Dep't of Corr.*,
876 F. Supp. 1437 (E.D. Pa. 1995) ...................................................................................... 12

*Baby Neal for & by Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994) ..................................................................................................... 20

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) .................................................................................................. 18

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ................................................................................................. 25

*Curiale v. Lenox Grp., Inc.*,
No. CIV A 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ........................................ 9

*Daniel B. v. O'Bannon*,
633 F. Supp. 919 (E.D. Pa. 1986) ........................................................................................ 10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................................. 16

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ................................................................................................... 9

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ................................................................................................. 10

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ................................................................................................. 21

*In re Auto. Refinishing Paint Antitrust Litig.*,
No. MDL NO. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ...................................... 10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................................ 13, 14, 16, 17

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................... 18

*In re CIGNA Corp.*,
   No. CIV.A. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) .......................................... 10

*In re Cigna Corp Sec. Litig.*,
   No. CIV.A. 02-8088, 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) .......................................... 20

*In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019) ............................................................................................... 25

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ............................................................................................... 20

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ....................................................................................... 15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ................................................................................................. 11, 21

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .......................................................................................... 13, 14

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................................... 15

*In re Nat. Football League Players Concussion Inj. Litig.*,
   775 F.3d 570 (3d Cir. 2014) ..................................................................................................... 19

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014) ............................................................................................... 10

*In re PNC Fin. Servs. Grp., Inc.*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006) ...................................................................................... 15

*In re Ravisent Tech. Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 6680, at * 24-25 (E.D. Pa. April 18, 2005) ............................. 13, 16, 17

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................................................................................... 12

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ....................................................................................................... 9

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................................... 23

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995) ............................................................................................ 12

*Landy v. Amsterdam*,
    815 F.2d 925 (3d Cir. 1987)................................................................................. 18

*McAlarnen v. Swift Transp. Co.*,
    No. CIV.A.09-1737, 2010 WL 365823 (E.D. Pa. Jan. 29, 2010) ............................................. 15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ................................................................................. 26

*Nafar v. Hollywood Tanning Sys., Inc.*,
    No. CIV.A.06-CV-3826 DMC, 2008 WL 3821776 (D.N.J. Aug. 12, 2008)............................ 22

*Neuberger v. Shapiro*,
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ................................................................................. 14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)................................................................................. 21

*Perry v. FleetBoston Fin. Corp.*,
    229 F.R.D. 105 (E.D. Pa. 2005) ................................................................................. 17

*Prudential*,
    148 F.3d................................................................................. 13, 15, 18

*Ridley v. MRS BPO, LLC*,
    No. CV 18-12696 (NLH/JS), 2019 WL 6888532 (D.N.J. Dec. 18, 2019)................................ 25

*Robbins v. Koger Properties, Inc.*,
    129 F.3d 617 (11th Cir. 1997)................................................................................. 18

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013)................................................................................. 25

*Smith v. Suprema Specialties, Inc.*,
    No. CIV. 02-168 (WHW), 2007 WL 1217980 (D.N.J. Apr. 23, 2007) ................................ 24

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................. 23

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)................................................................................. 20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)................................................................................. 20

*Thomas v. NCO Fin. Sys., Inc.*,
    No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ................................ 10

*United States v. 412.93 Acres of Land, More or Less, in Franklin & Towamensing Tps., Carbon Cty., State of Pa., Tract No. 113*,
  455 F.2d 1242 (3d Cir. 1972) ........................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................................... 20

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002) .......................................................................................... 24

*Winkler v. NRD Min., Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. 2000) ...................................................................................... 18

*Yedlowski v. Roka Bioscience, Inc.*,
  No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................... 23

**Statutes**

15 U.S.C. § 78u-4(a)(7) ........................................................................................................ 27

28 U.S.C. § 1715 ..................................................................................................................... 6

**Rules**

Fed. R. Civ. P.  23 ................................................................................................... 19, 25, 26

Fed. R. Civ. P. 23(a) ........................................................................................................ 19, 24

Fed. R. Civ. P.  23(a)(1) ......................................................................................................... 20

Fed. R. Civ. P.  23(a)(2) ......................................................................................................... 20

Fed. R. Civ. P.  23(a)(3) ......................................................................................................... 21

Fed. R. Civ. P.  23(a)(4) ......................................................................................................... 21

Fed. R. Civ. P.  23(b) ............................................................................................................. 24

Fed. R. Civ. P.  23(b)(1), (b)(2) ............................................................................................. 26

Fed. R. Civ. P. 23(b)(3) ............................................................................. 1, 9, 20, 24, 25, 26

Fed. R. Civ. P. 23(c)(l)(C) ..................................................................................................... 17

Fed. R. Civ. P. 23(e) ........................................................................................................... 1, 9

Fed. R. Civ. P. 23(e)(1) ............................................................................................................. 9

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................... 26

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 9

Fed. R. Civ. P. 23(g) ........................................................................................... 21, 22

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 (1986) .............. 24

*Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004) ....................................... 9, 26

## I.    PRELIMINARY STATEMENT

Lead Plaintiffs Scott Whiteley and Harry Berger (on behalf of themselves and each member of the Settlement Class[1]) ("Plaintiffs") submit this Memorandum of Law in support of their unopposed motion for preliminary approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, of the settlement of this securities class action filed on behalf those who purchased or otherwise acquired shares in Zynerba Pharmaceuticals, Inc. ("Zynerba" or the "Company") from March 11, 2019 through September 17, 2019, both dates inclusive (the "Class Period"). Plaintiffs also request that the Court schedule a Final Approval Hearing (the "Final Approval Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation, the Plaintiffs' request for attorneys' fees and reimbursement of expenses, and an award to the Class Representatives. While Defendants do not oppose the relief sought herein, the analysis and characterizations of the litigation and Settlement are provided only on behalf of Co-Lead Counsel and Plaintiffs, and do not necessarily reflect the views of Defendants.

Pursuant to the Stipulation of Settlement dated April 30, 2021 ("Stipulation"), filed contemporaneously herewith, Defendants Zynerba, Armando Anido ("Anido"), and James E. Fickenscher ("Fickenscher" and together with Zynerba and Anido, "Defendants"), through their insurer, have agreed to pay $4,000,000 in cash to the Settlement Class, as described more fully in the Stipulation, in return for a release of all claims (the "Settlement").  The Stipulation is the result of extensive arms' length negotiations between highly experienced counsel, which included a full-day mediation session before Michelle Yoshida, Esq. ("Yoshida") of Phillips ADR Enterprises ("PADRE").

---

[1] All capitalized terms that are not defined specifically in this memorandum have the same meanings as set forth in the Stipulation of Settlement.

1

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and therefore ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") attached to the Stipulation as Exhibit A, which would (1) preliminarily certify the Settlement Class; (2) preliminarily approve the Settlement; (3) hold that the manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances; (4) schedule a Final Approval Hearing[2] in which the Court will consider the request for final approval of:

(a) the Settlement set forth in the Stipulation;

(b) the Plan of Allocation of Settlement proceeds among Settlement Class Members;

(c) Co-Lead Counsel's application for an award of attorneys' fees and expenses; and

(d) the Class Representatives' application for an award;

(5) appoint Lead Plaintiffs as Class Representatives and Co-Lead Counsel as Co-Class Counsel; (6) appoint Strategic Claims Services as the Claims Administrator; and (7) order that Notice substantially in the forms of the proposed notices be sent to the proposed Settlement Class.

The proposed Settlement represents an excellent result for Settlement Class Members in light of the amount of potentially recoverable damages, Defendants' potential defenses, the risks and amount of time required to prosecute this litigation through trial and any potential appeals, and the reduction in the amount of available insurance coverage caused by litigation. Under the Settlement terms, Plaintiffs secured a recovery representing at least 10.4% of the most likely

---

[2] The Court has the discretion to hold the Settlement Hearing via telephone or other virtual means, should it be necessary given the COVID-19 crisis. Courts have conducted final settlement hearings by telephone. *See, e.g., Allen v. PixarBio Corp. et. al.*, 2:17-cv-00496 (D.N.J.) (telephonic final settlement approval hearing held on March 13, 2020); *Heckermann v. Montross, et. al.*, 1:17-cv-01673 (D. Del.) (telephonic final settlement approval hearing held on April 1, 2020).

recoverable damages, which is well within the range of reasonableness for class action settlements.[3] Moreover, given the likelihood that less than 100% of Settlement Class Members will file claims, the actual percentage of recovery will be even higher. So long as the Settlement appears *prima facie* reasonable, Co-Lead Counsel request that the Court preliminarily approve the Settlement so that notice can be sent to all the affected Class Members, who will have a right to be heard at the Final Approval Hearing.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. Procedural History Of The Litigation

This securities class action lawsuit was commenced on October 23, 2019 (ECF No. 1), on behalf of investors who purchased or otherwise acquired Zynerba securities from March 11, 2019 through September 17, 2019, both dates inclusive (the "Settlement Class Period") for alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants are Zynerba, Anido, and Fickenscher. On January 9, 2020, the Court appointed Scott Whiteley and Harry Berger as Lead Plaintiffs. (ECF No. 8). Lead Plaintiffs then filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") on March 9, 2020. (ECF No. 21).

During the Settlement Class Period, Zynerba conducted Phase II clinical testing of Zygel to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE") via a clinical trial called the "BELIEVE 1" trial. Zygel is

---

[3] This estimate is based on the decline in Zynerba's share price on September 18, 2019, net of market and industry-wide effects, following the Company's announcement of the results of Phase II clinical testing of Zygel designed to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE"), multiplied by the number of Zynerba shares purchased by Class Members during the Class Period and still held by as of that date, as constrained by the 90-day lookback provision of the PSLRA.

3

a transdermal cannabinoid-based ("CBD") treatment, and Zynerba's only product in development. The Complaint alleges that: Defendants knew about but failed to disclose adverse events experienced by participants during the BELIEVE 1 trial; on September 18, 2019, Defendants reported that 96% of BELIEVE 1 trial participants suffered treatment emergent adverse events ("TEAEs"), 60% suffered treatment related adverse events ("TRAEs") and of 48 trial participants, 10 reported serious adverse events ("SAEs"); and, on this news, Zynerba's stock price fell $2.46 per share, or 21.77%, to close at $8.84 per share on September 18, 2019.

From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability, or damages. Defendants moved to dismiss Plaintiffs' claims on April 23, 2020 (ECF No. 24). The Court denied Defendants' motion on November 25, 2020 (ECF No. 31). Defendants filed a motion for reconsideration on December 9, 2020 (ECF No. 32), which the Court denied on February 5, 2021 (ECF No. 38). Defendants filed their Answer to the Complaint on January 15, 2021 (ECF No. 36).

After engaging in a full-day mediation session with Ms. Yoshida, the Parties reached an agreement in principle to settle the Action on February 22, 2021. The Parties memorialized the key terms of the settlement in a Memorandum of Understanding, dated February 26, 2021. The Parties continued to negotiate the terms of the Stipulation of Settlement until its execution on April 30, 2021.

### B. Summary Of Key Terms Of The Proposed Settlement

Defendants have agreed to pay, through their insurer, $4,000,000 as described more fully in the Stipulation, in return for which all claims that have been, or could have been asserted in the Complaint against Defendants and Released Parties will be dismissed, barred, and/or released. The settlement monies will be deposited in an escrow account maintained by Huntington National Bank

4

and will be held in instruments or accounts backed by the full faith and credit of the United States Treasury. If the Settlement is approved, none of the monies will revert to Zynerba or its insurer. If the Settlement is not approved, or otherwise does not become effective, the monies, other than costs of notice, will revert.

1. *Class Notice and Settlement Administration*

      **a)**      **Notice**

The Postcard Notice, the Summary Notice of Pendency and Proposed Class Action Settlement ("Publication Notice"), or links to the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice") and Proof of Claim and Release Form, substantially in the forms annexed to the Stipulation will (i) be mailed, where disseminating the Postcard Notice, by first class mail, postage prepaid, within twelve (12) Business Days of entry of the Preliminary Approval Order, to all Class Members who can be identified with reasonable effort by Co-Lead Counsel, through the Claims Administrator; or (ii) be emailed, where disseminating the Summary Notice or links to the Notice and Proof of Claim and Release Form, within twelve (12) Business Days calendar days of the entry of the Preliminary Approval Order, to all Class Members for whom email addresses may be obtained with reasonable effort, through the Claims Administrator. The Publication Notice will be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* within twenty (20) Business Day of entry of the Preliminary Approval Order. Co-Lead Counsel will, at least seven (7) calendar days before the Final Approval Hearing, serve upon counsel for Defendants and file with the Court proof of publication of the Publication Notice. A copy of the Postcard Notice, the Publication Notice, Long Notice (together with the Postcard Notice and Publication Notice, "Notice"), Proof of Claim and Release Form, and Stipulation will also be posted on a website maintained by the Claims Administrator.

5

The Notice describes in plain English the terms of the Settlement, the considerations that led Co-Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed award to the Class Representatives.

The Notice will also set forth the date of the Final Approval Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Final Approval Hearing be scheduled 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 12 business days; Settlement Class Members to have over 60 days to consider their options and, if they choose, to file objections or opt out of the Settlement Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1715; as well as time for the Parties to respond to objections, if any.

The Notice will also set the date by which claims must be filed on the Settlement Fund, which Co-Lead Counsel requests be 30 calendar days prior to the Final Approval Hearing.

### b) Administration

Co-Lead Counsel selected and recommends Strategic Claims Services ("Strategic") to administer the notice and process the claims for the Settlement.[4] Strategic is a well-regarded and well known class action claims administrator, which is highly experienced in the administration of securities class action settlements.

2. *Papers in Support of the Settlement, Award of Co-Lead Counsel Fees and Expenses, and the Award to the Class Representatives*

No later than 21 calendar days prior to the Final Approval Hearing, Co-Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for an award of attorney fees and expenses, and an award to the Class Representatives. Those papers will

---

[4] A copy of the Agreement with Strategic will be submitted upon request for *in camera* inspection.

6

detail reasons why the Settlement should be approved, as well as Co-Lead Counsel's efforts undertaken on behalf of the Settlement Class (including a breakdown of the time and hourly rates of each attorney who contributed to the outcome).

No less than 7 calendar days prior to the Final Approval Hearing, Co-Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for a Compensatory Award to the Class Representatives.

3. *Objections*

Any Settlement Class Member who objects to the Settlement or related matters must do so at least 21 calendar days prior to the Final Approval Hearing, and must send copies of such objections to the Court as well as designated Settlement Class counsel and Counsel for Defendants. Any Settlement Class Member who does not timely file and serve a written objection to the terms and conditions of the proposed Settlement shall be foreclosed from seeking any adjudication or review of the terms and conditions of the proposed Settlement, or, if approved, the Order and Final Judgment, or any order relating thereto, by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing Zynerba stock transactions, as well as submit to the jurisdiction of this Court for possible deposition. These measures are intended to, among other things, thwart "professional objectors" who have appeared from time to time in securities actions.

4. *Opt Outs*

Any Settlement Class Member who wishes to be excluded from the Settlement Class must do so by written request accompanied by documentation of their Zynerba transactions, postmarked

7

no later than 21 calendar days prior to the Final Approval Hearing. The request for exclusion must be sent to the Claims Administrator (but not the Court).

5. *Termination of the Settlement*

Defendants have the right to withdraw from the Settlement if Class Members owning a previously negotiated number of shares elect to opt out of the Class. The threshold amount is set forth in a Supplemental Agreement that will not be filed with the Court unless and until a dispute among the Parties concerning its interpretation or application arises or it is otherwise ordered by the Court.

In the event that the Settlement is not approved by the Court, does not become final for any reason, or the Settlement otherwise is not consummated in accordance with the terms of the Settlement Stipulation, the Parties will return to their respective litigation positions as they existed immediately prior to the Settlement and the litigation will proceed apace.

6. *No Admission of Liability*

By entering into the Stipulation, the Defendants do not admit liability and continue to deny each and all of the claims asserted in the Action and expressly deny, inter alia, that Defendants have engaged in any wrongdoing, including, without limitation, that their public statements were false or misleading; that they failed to disclose any material information to investors; that they acted in any wrongful manner or otherwise with the requisite scienter; and that any investment losses sustained by Lead Plaintiffs and the Settlement Class were caused by Defendants' alleged misconduct.

8

### III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

#### A.  Standards for Preliminary Approval

Federal Rule of Civil Procedure 23(e)(1) requires court approval of any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a class action.  Court approval involves two stages: (1) preliminary approval followed by notice to the class, and (2) final approval after a hearing. *Curiale v. Lenox Grp., Inc.*, No. CIV A 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (citing *Manual for Complex Litigation* § 21.632 (4th ed. 2004)). The Third Circuit has held that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* at 595 (citation omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

When evaluating preliminary approval of a class action settlement, the court conducts a preliminary assessment of the settlement before directing notice.  Fed. R. Civ. P. 23(e). The parties must demonstrate that the Court will likely be able to ultimately approve the proposed settlement and certify the class. Fed. R. Civ. P. 23(e)(1). The Court will analyze: (1) the adequacy of representation by the class representatives and class counsel; (2) whether settlement negotiations were done fairly at arm's length; (3) the adequacy of relief provided under the settlement (including the terms of any proposed award of attorneys' fees and expenses); and (4) the equity of treatment of class members relative to one another. Fed. R. Civ. P. 23(e)(2). In addition, in this Circuit, the *Girsh* final approval factors guide courts' preliminary assessment of class action settlements, which include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery

completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

"In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." *Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (citation omitted). "This analysis often focuses on whether the settlement is the product of arms-length negotiations." *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL NO. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (citation omitted). In appraising the fairness of a proposed settlement, the opinion of experienced counsel is entitled to considerable weight. *See Daniel B. v. O'Bannon*, 633 F. Supp. 919, 926 (E.D. Pa. 1986).

**B. That This Settlement Was Negotiated At Arm's Length Between Experienced Counsel Supports Preliminary Approval**

The proposed Settlement was the result of arm's length negotiations between highly experience Co-Lead Counsel and Defendants' Counsel with the assistance of an experienced mediator, Ms. Yoshida. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (internal quotation omitted); *In re CIGNA Corp.*, No. CIV.A. 02-8088, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (similar); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014).

Counsel for all Parties were fully informed about the merits of the Action prior to the mediation session, having exchanged extensive mediation statements and having had the benefits of briefing on Defendants' motion to dismiss and the Court's decision thereon, as well as briefing on Defendants' motion for reconsideration and the Court's decision thereon, and thus were able to participate intelligently in the settlement process. Plaintiffs and Co-Lead Counsel were also informed in part by Zynerba's low stock price, the fact that the source for recovery would likely be the Company's insurance policies (a significant portion of which would be expended defending the Action), and the fact that Zynerba's sole product Zygel might not receive FDA approval. The well-informed arms-length negotiations during the mediation process support the fairness of the Settlement. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 796 (3d Cir. 1995) (presumption of fairness if settlement negotiations conducted at arm's length by experienced counsel). Counsel engaged in a full day mediation, via Zoom video conferencing system, where the strengths and weaknesses of the Parties' respective claims and defenses were extensively debated. Based upon Co-Lead Counsel's familiarity with the factual and legal issues of this Action, Co-Lead Counsel were ultimately able to negotiate a fair and equitable result for the Settlement Class.

Moreover, the Action was vigorously prosecuted for one and a half years. Plaintiffs, through Co-Lead Counsel, conducted a thorough investigation relating to the claims and underlying events and transactions of the Action. This process included reviewing and analyzing: (i) Zynerba's filings with the Securities and Exchange Commission (the "SEC"); (ii) regulatory filings and reports; and (iii) securities analysts' reports, public statements, investor conference transcripts, press releases, media reports and other public statements issued by the Company. In addition, as discussed above, Plaintiffs engaged in extensive motion to dismiss briefing, motion

for reconsideration briefing, and settlement negotiations. There can be no question that at the time the Settlement was reached, Plaintiffs and their counsel had a clear view of the strengths and weaknesses of the claims in the Action, as well as the propriety of settlement.

Courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 504 (W.D. Pa. 2003); *Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995). In negotiating the Settlement, Plaintiffs had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Partner Tamar A. Weinrib and Rosen Law Firm's Senior Partner Jacob Goldberg) who are highly experienced in complex securities litigation and familiar with the legal and factual issues of the case. Co-Lead Counsel are of the view that the Settlement provides substantial benefits to the Class. In reaching this conclusion, Co-Lead Counsel considered the strengths and weaknesses of Plaintiffs' claims based on their investigation to date, Defendants' interpretations of that evidence and potential defenses, the risk of recovering even less as the litigation continued and the insurance policies were further depleted, and the risks that the Court or a jury may have ruled in favor of Defendants on some or all of the claims resulting in no or little recovery for the Settlement Class. As a result, Co-Lead Counsel's opinion should be afforded considerable weight on this motion and, ultimately, at final approval. *See Alves*, 2012 WL 6043272, at *22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.") (internal quotations omitted).

### C. The *Girsh* Factors Support Preliminary Approval

#### 1. *The Complexity, Expense and Likely Duration of the Litigation*

Courts in this Circuit have long held that the complexity, expense, and likely duration of litigation in a complex securities class action weigh in favor of approving a class action settlement. Therefore, the first *Girsh* factor reflects "the probable costs in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001); s*ee also In re Ravisent Tech. Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at * 24-25 (E.D. Pa. April 18, 2005) (approving settlement where "[a]bsent a settlement, this action likely would not be resolved for several additional years"); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) ("*Ikon*") (noting the "complicated nature of large class actions alleging securities fraud," where "there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trail through numerous public and private documents").

In the absence of the Settlement, this Action would have necessitated complex, expensive, and lengthy litigation. Defendants would have defended this litigation vigorously, as demonstrated by their motion to dismiss and motion for reconsideration. Defendants would have likely opposed Plaintiffs' anticipated motion for class certification, filed motions for summary judgment, and ultimately appealed any judgment in Plaintiffs' favor. The Parties also likely would have engaged in lengthy and costly expert discovery, involving expert reports, depositions, and motions to disqualify expert witnesses through complex *Daubert* motions.

Plaintiffs' claims involve numerous complex legal and factual issues requiring extensive expert testimony about FDA procedures and arcane medical, scientific, statistical, and economic issues, which would add to the expense and duration of the litigation. This Court and the jury at trial would have had to weigh evidence pertaining to complex factual and legal issues, as well as weigh difficult issues in a battle of experts, all of which strongly favor settlement. *See Prudential*,

13

148 F.3d at 318 ("[T]he trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement."); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) (difficulty of presenting issues involving extensive expert testimony at trial weigh in favor of settlement); *Ikon*, 194 F.R.D. at 179 (same). Moreover, given the contested nature of this litigation, any judgment rendered would likely be the subject of post-trial motions and appeals, again further prolonging any possibility for recovery for the Class.

Rather than engage in continued litigation that is complex, time consuming and expensive, with an uncertain outcome, the Settlement secures an immediate benefit for the Class.

### 2. The Reaction of the Class to the Settlement

Before notice of a settlement is disseminated, it is not possible to gauge the reaction of a class (the second *Girsh* factor). Lead Plaintiffs, however, support the Settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

"This factor captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235.

Here, though discovery had been stayed for much of the case by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs conducted an extensive pre-discovery investigation and drafted and filed a comprehensive Complaint. Plaintiffs obtained a damages estimate from an expert. Plaintiffs continued to analyze Zynerba's press releases, SEC filings, investor conference calls and other public statements after the filing of the Complaint to fully understand the issues concerning the results of various clinical trials of Zynerba's sole product Zygel and Zynerba's communications with FDA. This investigation gave Plaintiffs a clear

understanding of the merits of the Action. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though PSLRA had prevented discovery from ever taking place). Having fully briefed Defendants' motion to dismiss and motion for reconsideration, the Parties had the ability to properly assess the relative strengths and weaknesses of their positions. The facts and analysis developed for and at mediation, including the Parties' exchange of lengthy and detailed mediation statements, also support the Settlement.

Moreover, when the settlement results from arm's-length negotiations, the Court "affords considerable weight to the views of experienced counsel regarding the merits of the settlement." *McAlarnen v. Swift Transp. Co.*, No. CIV.A.09-1737, 2010 WL 365823, at *8 (E.D. Pa. Jan. 29, 2010); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 430 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). This case settled after an arm's-length negotiation mediated by well-regarded Mediator Michelle Yoshida.

Thus, this factor weighs in favor of approving the Settlement.

4. *The Risks of Establishing Liability*

In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery against the continuing risk of establishing liability and damages through litigation. *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d at 317. The reaction of a jury to complex expert testimony is highly unpredictable. *In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 434–35 (W.D. Pa. 2006). Although Plaintiffs survived Defendants' motion to dismiss and motion for reconsideration,

15

and the Parties were proceeding with discovery, there remained many hurdles to overcome such as class certification, summary judgment, and trial. The risk of material adverse findings against Plaintiffs is not insignificant. While Plaintiffs believe they could successfully establish all the elements of the securities fraud claims, scienter and falsity present complex issues of proof for Plaintiffs. For example, Defendants contend that they had no duty to disclose the adverse events that occurred during the Phase II clinical trial for Zygel sooner than they did. Defendants also maintain that Plaintiffs will ultimately fail to prove scienter. These issues present hotly contested jury questions, the resolution of which is uncertain and costly to all Parties. Therefore, this factor weighs in favor of approving the Settlement.

### 5. The Risks of Establishing Damages

Plaintiffs must prove damages and loss causation. *See Ravisent Techs*., 2004 U.S. Dist. LEXIS 13255, at *30 (recognizing difficulty of proving damages in securities actions); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Plaintiffs would rely on expert witnesses to testify about the impact of varying complex economic factors, including general market conditions and the impact of various disclosures. Defendants' expert and fact witnesses would be expected to challenge any assumptions or computations made by Plaintiffs' experts and to assert that any recoverable damages were either non-existent or were a small fraction of those claimed by Plaintiffs. *See Cendant,* 264 F.3d at 239 (parties' efforts to dispute damages at trial undoubtedly would result in "'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe"). The reaction of a jury to such complex expert testimony is highly unpredictable. *See United States v. 412.93 Acres of Land, More or Less, in Franklin & Towamensing Tps., Carbon Cty., State of Pa., Tract No. 113*, 455 F.2d 1242, 1247 (3d Cir. 1972) ("The jury . . .  is under no obligation to accept as completely true the testimony of any expert

16

witness. It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it.").

The possibility that Plaintiff could not establish damages or loss causation is a substantial hurdle that militates strongly in support of the Settlement.

### 6. *The Risks of Maintaining the Class Action Through Trial*

Even if the Court certified the class in this Action, there would always be the risk that the Court would reconsider or amend its decision at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(l)(C); *see also Ravisent Techs*., 2005 U.S. Dist. LEXIS 6680, at *31 ("[d]efendants might also seek to decertify the class prior to trial"). "What the district court giveth, the district court may taketh away: the court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable." *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 116 (E.D. Pa. 2005). Accordingly, the inherent risks of maintaining this action as a class action through final judgment also strongly favor approval of the Settlement.

### 7. *The Ability of Defendants to Withstand a Greater Judgment*

This *Girsh* factor addresses whether Defendants "could withstand a judgment for an amount significantly greater that the [proposed] Settlement." *Cendant*, 264 F.3d at 240. Here, a significant source of recovery in this settlement is Zynerba's directors' and officers' liability insurance policies, which continued litigation would have dissipated.  Zynerba has no FDA approved products generating revenue, and Zygel is the only product in Zynerba's pipeline. Zygel has not been approved by the FDA and therefore, has not been commercialized. The Company has no revenue. Thus, there is significant risk that further litigation would not have resulted in a larger recovery for the Class than is being awarded under the Settlement. This is especially true because

17

the insurance proceeds are a wasting asset, and defense costs would only continue to grow. This factor favors the Settlement.

> 8. *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks of Litigation*

With respect to the last two *Girsh* factors, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery against the continuing risks of litigation. *See Prudential*, 148 F.3d at 317. Many securities class actions brought under the Exchange Act have been lost by the plaintiffs at trial, on post-trial motion, or on appeal. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 129 F.3d 617 (11th Cir. 1997) (overturning an $81 million jury verdict for the plaintiff class on loss causation grounds and ordering the entire litigation dismissed); *see also Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (reversing the judgment on the $38 million jury verdict, resulting in a total loss after ten years of litigation). *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation affirmed on appeal); *Winkler v. NRD Min., Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs).

In light of the risks of establishing liability and damages at trial, Plaintiffs believe that this Settlement falls within the range of reasonableness. The Settlement Amount compares favorably to the "average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995." *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005); *see also* Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements—2020 Review and Analysis*, at 8[5] (noting that, in cases with potential damages between $25 and $74 million, the

---

[5]    Available    at    https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis (last accessed on March 18, 2021).

18

median securities settlement as a percentage of potential damages was 7.6% between 2011 and 2019) Here, the $4,000,000 cash settlement amount represents approximately 10.4% of estimated damages of $38.5 million and is well above these average figures.

Thus, all of the relevant *Girsh* factors lead to the conclusion that the proposed Settlement is fair, reasonable, and adequate and should receive preliminary approval.

## IV.   THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON CERTIFICATION TO PROVIDE NOTICE TO THE PUTATIVE SETTLEMENT CLASS

In preliminarily approving the proposed settlement, this Court should preliminarily determine that class treatment is appropriate. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the Final Approval Hearing. *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.*.

Rule 23 of the Federal Rules of Civil Procedure governs class certification, and requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

19

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action meets these requirements.

### A. Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "if the named plaintiff demonstrates that the potential  number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Although the exact number of Settlement Class Members is not precisely known, courts generally presume that the numerosity requirement has  been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).  Here, numerosity is satisfied as Zynerba's common stock was listed on the NASDAQ with on average of over 21 million shares of common stock outstanding.

### B. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); The common issue "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Courts will usually find commonality where, as here, the plaintiffs in securities cases involving alleged misrepresentations appeared in a company's SEC filings. *Sullivan*, 667 F.3d at 336; *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 201 (E.D. Pa. 2008) ("Courts in this Circuit also

have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.") (citation omitted).

## C. Typicality

Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).

Here, Plaintiffs' claims are similar to those of the other members of the Settlement Class. Just like the other members of the proposed Settlement Class, Plaintiffs purchased Zynerba shares at prices that were allegedly artificially inflated by Defendants' allegedly false and misleading statements and were harmed when the alleged truth emerged. Plaintiffs' claims stand or fall with those of the Settlement Class, and thus, they are typical.

## D. Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: *first*, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; *second*, the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the Settlement Class. Rule 23(g), adequacy of class counsel is now considered separately from the determination of the

21

adequacy of the class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

  *(i)  Adequacy of the Proposed Class Representatives*

  Proposed Class Representatives, Plaintiffs Scott Whiteley and Harry Berger, have no interests that are antagonistic to other members of the proposed Settlement Class, and have no unique defenses. Plaintiffs, on their own behalf and on behalf of all Settlement Class members, seek to recover damages caused by Defendants' alleged unlawful conduct. Their interests are congruent with, and not antagonistic to, other Settlement Class Members' interests.

  *(ii)  Rule 23(g) Adequacy of the Proposed Class Counsel*

  Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Nafar v. Hollywood Tanning Sys., Inc.*, No. CIV.A.06-CV-3826 DMC, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008).

  Co-Lead Counsel is highly experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country (*See* Dkt. No. 2-6 (Pomerantz LLP Resume); *see also* Dkt. No. 2-7 (The Rosen Law Firm, P.A. Resume)). Courts have consistently found Pomerantz and Rosen Law to be well suited as class counsel in securities class actions. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 14, (ECF No. 428, February 2, 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation." Pomerantz, as sole Lead Counsel for the class, achieved a historic $2.95 billion settlement, the

largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) ("The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification.")*; Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions.").

Although this proposed settlement was reached during the initial stages of the litigation, Co-Lead Counsel spent considerable time conducting an investigation, which culminated in the filing of the initial complaint and the operative Complaint. The ability to achieve a substantial settlement quickly for the Settlement Class speaks to Co-Lead Counsel's experience. *Yedlowski*, 2016 WL 6661336, at *20 ("[Rosen Law's] success in quickly bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved."). The investigation included reviewing Zynerba's public statements and filings as well as retaining an investigator. Co-Lead Counsel drafted briefing successfully opposing Defendants' motion to dismiss and motion for reconsideration. Co-Lead Counsel also prepared a comprehensive mediation statement and participated in negotiations which culminated in the Settlement. Given Co-Lead Counsel's extensive securities class action experience, they are knowledgeable and capable of evaluating cases to determine whether a settlement, and at what stage of the litigation, would be beneficial to the class, and when to continue pursing litigation of

23

an action. As such, Pomerantz and Rosen Law Firm are more than adequate to serve as settlement class counsel.

### E. Common Questions Predominate and the Class Is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish at least one of the requirements of Rule 23(b). Here, Plaintiffs seek to certify a Settlement Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).  Plaintiffs satisfy the predominance and superiority criteria of Rule 23(b)(3).

"The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007) (citing cases).

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002), *aff'd sub nom. Wiesfeld v. Sun Chem. Corp.*, 84 F. App'x 257 (3d Cir. 2004) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification[.]"). Here, the existence of common questions and their predominance over individual issues are exemplified by the fact that if every Settlement Class Member were to bring an individual action, each plaintiff would be required to demonstrate the same omissions or misrepresentations in Zynerba's SEC filings to

24

prove liability. Thus, this case is an example of the principle that the predominance requirement is "readily met" in many securities class actions. *Amchem Products, Inc.*, 521 U.S. at 625.

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Settlement Class Members' claims. For certification of a settlement class, as Plaintiffs seek here, the Court is not required to analyze each superiority factor in great detail. The Supreme Court held that a court does not need to consider whether there would be manageability issues at trial since a proposed settlement would avoid the need for trial. *Amchem Products, Inc.*, 521 U.S. at 620. Rather, to the court is to focus on evaluating the class definition to ensure that it is not "unwarranted or overbroad." *Id.* The Third Circuit, and courts throughout the Circuit, have followed suit recognizing that "certain Rule 23 considerations, such as 'whether the case, if tried, would present intractable management problems,' are not applicable in the settlement class context." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 374 (E.D. Pa. 2019) ("[B]ecause a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear.").

Court have recognized that a class needs to be "readily ascertainable based on objective criteria" for certification. *Ridley v. MRS BPO, LLC*, No. CV 18-12696 (NLH/JS), 2019 WL 6888532, at \*11 (D.N.J. Dec. 18, 2019). To demonstrate ascertainability, the Third Circuit requires a plaintiff to show: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)). Further, a plaintiff is not required to identify every class member, but must simply show that "class members can be identified." *Id.* Here, the proposed class is clearly defined as Zynerba investors who

purchased or otherwise acquired publicly traded Zynerba common stock during a finite period. As such, a class action is the superior method of adjudication and satisfies Rule 23(b)(3).

### V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual For Complex Litigation (Fourth)* §§ 21.632, 21.633 (2004). To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Here, the Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through: (a) Zynerba's transfer records; and (b) via nominees or custodians which commonly hold securities in "street name" for the benefit of their customers who are the beneficial purchasers of the securities. Plaintiffs further propose to supplement the mailed or emailed Notice with a   Publication Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* within twenty (20) Business Day of entry of the Preliminary Approval Order, as well as to post Notice and all other relevant Settlement documents on the notice website authorized by this Court. The Long Notice, Publication Notice and Postcard Notice are attached to the Stipulation as Exhibits B, C and D.

The proposed Notice contains all of the information required by Rule 23 of the Federal Rules of Civil Procedure and by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Accordingly, in granting preliminary approval of the proposed Settlement, Plaintiffs respectfully

26

request that the Court also approve the proposed form and method of giving notice to the Class. As required by the PSLRA, the Notice specifies: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

The Notice also defines the Settlement Class; describes the Plan of Allocation; summarizes the nature, history and status of the Action; identifies the Settlement Class's claims and issues; discusses the rights of persons who fall within the definition of the Settlement Class; and explains why Plaintiffs and Co-Lead Counsel are proposing the Settlement. Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. Specifically, the Notice provides the name and mailing address for the Claims Administrator. For those Settlement Class Members who wish to participate in the Settlement, the Notice provides instructions on the timing and process for completing and submitting the Proof of Claim and Release form that accompanies the Notice. The Summary Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim and Release form may be

obtained by writing the Claims Administrator, or by accessing the documents on the notice website. Finally, the Notice sets forth the date, time, and place of the Final Approval Hearing, along with the procedures for commenting on the Settlement and includes the postal address for the Court, Co-Lead Counsel, and counsel for Defendants.

Thus, the proposed Notice to be sent to the Class provides all of the information required by the PSLRA. The Court should approve the proposed form of Notice and direct that notice be given to the Class as proposed by the parties.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Final Approval Hearing. | At least 100 days after the Court preliminarily approves the Settlement |
| Mailing of Notice and Proof of Claim and Release. | No later than 12 business days after the entry of Preliminary Approval Order. (the "Notice Date") |
| Publication of Publication Notice. | No later than twenty (20) business days after the entry of the Preliminary Approval Order. |
| Filing deadline for requests for exclusion. | Postmarked no later than 21calendar days prior to the Final Approval Hearing. |
| Filing deadline for objections. | No later than 21 calendar days prior to the Final Approval Hearing. |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than 21 calendar days prior to the Final Approval Hearing. |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Final Approval Hearing. |
| Date for Claims to be Filed | No later than 30 calendar days after the Final Approval Hearing |

## VII.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily certifying the Settlement Class; (2) preliminarily approving the Settlement; (3) holding that the manner and forms of notice set forth in the Preliminary Approval Order satisfy due process and provide the best notice practicable under the circumstances; (4) scheduling a Final Approval Hearing in which the Court will consider the request for final approval of: (a) the Settlement set forth in the Stipulation; (b) the Plan of Allocation of Settlement proceeds among Settlement Class Members; (c) Co-Lead Counsel's application for an award of attorneys' fees and expenses; and (d) the application for an award to the Class Representatives; (5) appointing Plaintiffs as Class Representatives and Co-Lead Counsel as Co-Class Counsel; (6) appointing Strategic Claims Services as the Claims Administrator; and (7) ordering that Notice substantially in the forms of the proposed notices be given to the proposed Settlement Class.

Dated: April 30, 2021

Respectfully submitted,
**ROSEN LAW FIRM**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com

**ROSEN LAW FIRM**
Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

29

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
         taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
Email: pdahlstrom@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs and
the Proposed Settlement Class*

30

## CERTIFICATE OF SERVICE

I hereby certify that on this on April 30, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the Parties registered to the Court's CM/ECF system.

/s/ Jacob A.Goldberg
Jacob A. Goldberg

31