**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT WHITELEY and HARRY BERGER, Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ZYNERBA PHARMACEUTICALS, INC., ARMANDO ANIDO, and JAMES E. FICKENSCHER, <br><br> Defendants. | Case No: 2:19-cv-04959-NIQA |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................................... 1

II.   SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 3

      A.    PROCEDURAL HISTORY OF THE LITIGATION............................................ 3

      B.    ARGUMENT.................................................................................................... 5

            1.    The Settlement Warrants Final Approval ..................................... 5

            2.    The Proposed Settlement Carries a Presumption of Fairness .................... 5

            3.    The *Girsh* Factors Support Final Approval ................................. 6

                  a)    Complexity, Expense, and Likely Duration of Litigation and the
                        Risks of Establishing Liability and Damages and Maintaining the
                        Class Action Through Trial ............................................. 7

                  b)    Stage of Proceedings and Maturity of Underlying Substantive
                        Issues.................................................................. 8

                  c)    Range of Reasonableness of Settlement Fund ............................... 9

                  d)    The Plan of Allocation is Fair and Reasonable............................ 10

      C.    CERTIFICATION OF THE CLASS IS APPROPRIATE.................................. 11

      D.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS
            ...................................................................................... 12

III.  CONCLUSION.................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981).........................................................................................................5

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..........................................................................................6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................................................................6

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010)..........................................................................................5

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).....................................................................................................12

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)..........................................................................................6

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ........................................................................................7

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...........................................................................7

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006).........................................................................................10

*In re Imprelis Herbicide Mktg.*,
  296 F.R.D. 351 (E.D. Pa. 2013).....................................................................................9

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016)......................................................................................7, 9

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
  3:09CV1293 VLB,2012 WL 3589610 (D. Conn. Aug. 20, 2012).................................7

*In re ViroPharma Inc. Sec. Litig.*,
  12-2714, 2016 U.S. Dist. LEXIS 8626, at *39 (E.D. Pa. Jan. 25, 2016)....................10

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)...................................................................................5, 6, 9

*Krell v. Prudential Ins. Co. of Am. (In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent
  Actions)*,
  148 F.3d 283 (3d Cir. 1998)...................................................................................5, 7, 9

*Lazy Oil Co. v. Witco Corp.*,
  95 F. Supp. 2d 290 (W.D. Pa. 1997) ................................................................... 10

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ......................................................................... 7

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ............................................................................. 11

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985) ............................................................................... 13

**Statutes**

15 U.S.C. § 77z-1(a)(7), 78u-4(a)(7) .................................................................... 13

15 U.S.C. §§ 78j(b), and 78t(a) ............................................................................. 4

**Rules**

Fed. R. Civ. P. 23 (c)(2) ...................................................................................... 12

Fed. R. Civ. P. 23 (e)(1) ...................................................................................... 12

Fed. R. Civ. P. 23(a) and (b)(3); and (ii) .............................................................. 12

Rule 23 ....................................................................................................... 1, 12, 13

Rule 23 (c)(2)(B) ......................................................................................... 12, 13

Rule 23(e), Fed. R. Civ. P ..................................................................................... 1

**Regulations**

17 C.F.R. § 240.10b-5 .......................................................................................... 4

**Other Authorities**

4 *Newberg on Class Actions* § 13.44 (5th ed. 2014) ............................................. 5

Lead Plaintiffs Scott Whiteley and Harry Berger (collectively, "Plaintiffs"), submit this Memorandum of Law in support of their unopposed motion for final approval pursuant to Rule 23(e), Fed. R. Civ. P., of a $4 million settlement ("Settlement") of this securities fraud class action filed on behalf of purchasers of securities in Zynerba Pharmaceuticals, Inc. ("Zynerba" or the "Company") during the period March 11, 2019 through September 17, 2019, both dates inclusive (the "Class Period"). The terms of the Settlement are set forth in the Stipulation of Settlement dated April 30, 2021 (the "Stipulation") (ECF No. 43), preliminarily approved by this Court on May 12, 2021 (ECF No. 44).[1]

## I.    PRELIMINARY STATEMENT

After two years of litigation, Plaintiffs, through Plaintiffs' Counsel, propose for this Court's final approval: (1) a settlement and dismissal of this action against Defendants in exchange for the payment, through Defendants' insurance carrier(s) of $4,000,000 in cash; (2) certification of this action as a class action under Rule 23 to effectuate the class settlement; and (3) a Plan of Allocation for the disbursement of the proceeds among Settlement Class members.[2]

The $4 million Settlement is fair, reasonable, and adequate, as well as an excellent result for the Class. Plaintiffs secured a recovery representing at least 10.4% of the maximum recoverable damages, which is well within the range of reasonableness for class action settlements.[3] Moreover, given the likelihood that less than 100% of Class Members will file claims, the actual percentage of recovery is even higher.

Based upon Plaintiffs' Counsel's investigation of the Settlement Class' claims, past

---

[1] All capitalized terms not otherwise defined herein are defined in the Stipulation.

[2] A memorandum in support of Lead Counsel's request for an award of attorneys' fees is filed concurrently herewith.

[3] This estimate is based on the decline in Zynerba's share price on September 18, 2019, net of market and industry-wide effects, following the Company's announcement of the results of Phase II clinical testing of Zygel designed to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE"), multiplied by the number of Zynerba shares purchased by Class Members during the Class Period and still held by as of that date, as constrained by the 90-day lookback provision of the PSLRA.

experience in similar cases, and the likely battles that would ensue concerning class certification, damages, and liability, continuing the litigation would have only drained the resources available to compensate investors and substantially delayed payment of any recovery. The Settlement provides the Class with meaningful recovery without the need for continued litigation that would inevitably have been extremely time-consuming, expensive, and requiring the aid of experts.

This Preliminary Approval Order preliminarily certified the following Settlement Class:

> All persons and entities who purchased or otherwise acquired Zynerba securities between March 11, 2019 and September 17, 2019, both dates inclusive, and excludes (i) the Defendants; (ii) the officers and directors of Zynerba during the Settlement Class Period; (iii) the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons; (iv) any entity in which any Defendant has or had a controlling interest during the Settlement Class Period; and (v) all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

Thereafter, on May 28, 2021, the Claims Administrator, Strategic Claims Services ("SCS"), mailed Postcard Notice via first class mail with postage prepaid, to 37 individuals and organizations identified in the transfer agent records provided to SCS by Defendants' Counsel. *See* Declaration of Sarah Evans Concerning: (A) Mailing Of The Postcard Notice; (B) Publication Of The Publication Notice; and (C) Report On Requests For Exclusion And Objections ("Evans Decl."), filed concurrently herewith, ¶ 4.   The same day, SCS caused a letter to be mailed or e-mailed to 1,224 nominees contained in its proprietary master mailing list. *Id.,* ¶ 5. The letter notified them of the Settlement and requested that within 10 calendar days from the date of the letter, they either (a) send a Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email an electronic version of the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing ("Publication Notice") or a direct link to the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice") and Proof of Claim and Release Form ("Claim

2

Form", together with the Long Notice, "Long Notice and Claim Form") supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, to the extent email addresses were available, of such beneficial owners so that SCS could promptly mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them. *Id.* As a result, to date SCS has mailed a total of 24,807 Postcard Notices. *Id.,* ¶ 6. Certain Nominee Account Holders notified SCS that they collectively emailed 15,905 potential Settlement Class Members to notify them of the Settlement and provide either the Publication Notice or direct links to the Long Notice and Claim Form on the Settlement webpage. *Id.,* ¶ 7. Also on May 28, 2021, SCS sent the Depository Trust Company a Long Notice and Claim form to post on its Legal Notice system. *Id.,* ¶ 9. SCS caused the Publication Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on June 7, 2021. *Id.,* ¶ 10.

The deadline for filing objections and requests for exclusion is August 10, 2021. Thus far, no objections and no requests for exclusion have been received by Plaintiffs' Counsel or SCS. *Id.* at ¶¶ 13-14. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

The hearing on these matters has been scheduled for August 31, 2021.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    PROCEDURAL HISTORY OF THE LITIGATION

This Action was first filed on October 23, 2019 in the Eastern District of Pennsylvania. By order dated January 9, 2020, the Court appointed Scott Whiteley and Harry Berger as Lead Plaintiffs, and Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel. An Amended Complaint was filed March 9, 2020 asserting securities law claims against Defendants on behalf

of Zynerba investors during the Class Period.

The Amended Complaint charged that Defendants' conduct violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).  Specifically, the Amended Complaint alleged that during the Settlement Class Period, Zynerba conducted Phase II clinical testing of Zygel to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE") via a clinical trial called the "BELIEVE 1" trial. Zygel is a transdermal cannabinoid-based ("CBD") treatment, and Zynerba's only product in development. The Complaint alleges that: Defendants knew about but failed to disclose adverse events experienced by participants during the BELIEVE 1 trial; on September 18, 2019, Defendants reported that 96% of BELIEVE 1 trial participants suffered treatment emergent adverse events ("TEAEs"), 60% suffered treatment related adverse events ("TRAEs") and of 48 trial participants, 10 reported serious adverse events ("SAEs"); and, on this news, Zynerba's stock price fell $2.46 per share, or 21.77%, to close at $8.84 per share on September 18, 2019.

From the outset of the litigation, Defendants have consistently denied any wrongdoing, liability or damages.  Defendants moved to dismiss the Amended Complaint (ECF No. 24).  On November 25, 2020, the Court granted in part and denied in part Defendants' motions to dismiss (ECF No. 31). Defendants moved for reconsideration on December 9, 2020 (ECF No. 32), which the Court denied on February 5, 2021 (ECF No. 38). Defendants filed their Answer to the Complaint on January 15, 2021 (ECF No. 36).).  After engaging in a full-day mediation session with Michelle Yoshida, esq. of Phillips ADR Enterprises, the Parties reached an agreement in principle to settle the Action for $4 million on February 22, 2021. The Parties memorialized the key terms of the settlement in a Memorandum of Understanding, dated February 26, 2021. The

4

Parties continued to negotiate the terms of the Stipulation of Settlement until its execution on April 30, 2021.

### B.    ARGUMENT

#### 1.    The Settlement Warrants Final Approval

A court may approve a proposed class-action settlement if it is "fair, reasonable, and adequate." *Krell v. Prudential Ins. Co. of Am. (In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 316 (3d Cir. 1998). There is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) (citations omitted). Moreover, the Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. See William Rubenstein, Alba Conte, & Herbert B. Newberg, 4 *Newberg on Class Actions* § 13.44 (5th ed. 2014).

#### 2.    The Proposed Settlement Carries a Presumption of Fairness

The Third Circuit has directed district courts to "apply an initial presumption of fairness when reviewing a proposed settlement where: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (citation omitted).

Here, all four elements are met. The proposed Settlement is the product of arm's-length negotiations among counsel with extensive experience in securities class-action litigation. Though

5

the parties agreed to settle prior to commencing discovery, Plaintiffs' Counsel comprehensively and diligently investigated the claims prior to mediation. The parties negotiated with the assistance of an experienced mediator. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] . . . mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."). In addition, as noted above, no objections have been filed. *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d at 535 (finding presumption of fairness where "only a small fraction of the purported class" objected.)

### 3.    The *Girsh* Factors Support Final Approval

The Third Circuit has identified nine factors courts should consider when evaluating a class-action settlement: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (internal quotations and punctuation marks omitted); *accord City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). As explained in Lead Plaintiffs' Memorandum Of Law In Support Of Unopposed Motion For Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures ("MOL ISO Preliminary Approval"), (ECF No. 42-1), and again herein, the *Girsh* factors support approval of the Settlement. The Third Circuit has also suggested in *Prudential* that courts consider certain additional factors described as "permissive and non-exhaustive." They include:

[1] the maturity of the underlying substantive issues, as measured by experience in

6

adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) (citing

*Prudential*, 148 F.3d at 323).

> **a)** **Complexity, Expense, and Likely Duration of Litigation and the Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial**

Here, while Plaintiffs believe this case is strong, the "risk, expense, complexity, and likely duration of further litigation" were likely to be substantial. The Settlement provides the Class with substantial relief, without the delay and expense of trial and post-trial proceedings.

There are significant risks to proving liability, materiality, loss causation and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain (despite Plaintiffs' Counsel's confidence). *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, 3:09CV1293 VLB, 2012 WL 3589610, at \*6 (D. Conn. Aug. 20, 2012). Although Plaintiffs' Counsel believes that this is a strong case, certain risks and uncertainties exist, and numerous other securities class actions have been prosecuted in the belief that they were meritorious, only to lose at summary judgment, at trial, or on appeal.[4]

---

[4] Many plaintiffs have won at trial, only to lose on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant).

Further, while Plaintiffs are highly confident that class certification is appropriate for this case and that their anticipated motion for class certification would have prevailed, Defendants likely would have contested any class certification motion vigorously.

If the parties did not agree to settle, they would have faced an expensive trial with an uncertain outcome. The jury would have had to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, and damages. All of this would have been time consuming, without necessarily increasing the amount of recovery given the limited nature of the most likely source of recovery, the insurance policies.

### b)    Stage of Proceedings and Maturity of Underlying Substantive Issues

On November 25, 2020, the Court denied Defendants' motions to dismiss. The Parties faced extensive fact and expert discovery, including depositions, as well as the production and review of voluminous documents. Plaintiffs also planned to file a motion for class certification, supported by a market efficiency expert, which Defendants likely would have opposed, proffering their own market efficiency expert. All of this would have substantially reduced the remaining available insurance.

In considering whether to enter into the Settlement, Plaintiffs weighed the value of an immediate guaranteed settlement against the challenges and significant proceedings that remained ahead, such as: (i) fact depositions; (ii) expert reports, depositions, and *Daubert* motions contesting the qualifications and opinions of each expert; (iii) summary judgment briefing; (iv) trial preparation, including numerous *in limine* motions; (v) trial; and (vi) appeals.

Although the parties had not completed discovery, Plaintiffs' Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement. By the time the Settlement was reached, Plaintiffs' Counsel had: (1) reviewed and analyzed Class

8

Period and pre-Class Period public filings, annual reports, press releases, quarterly-earnings-call and industry-conference transcripts, and other public statements; (2) reviewed and analyzed stock trading data relating to the Company as well as analyst reports and major financial news service reports; (3) consulted with experts; (4) drafted the initial complaint and the Amended Complaint to comply with the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (5) researched and drafted an opposition to Defendants' motion to dismiss; (6) researched and drafted an opposition to Defendants' motion for reconsideration; (7) prepared for and engaged in a mediation, including drafting a mediation statement; and (8) negotiated the final terms of the Settlement.

Accordingly, Plaintiffs' Counsel "had developed enough information about the case to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 439. Plaintiffs' Counsel understood the strengths and weaknesses of the case and had an ample basis for making an informed judgment concerning the fairness of the settlement. *See In re Imprelis Herbicide Mktg.*, 296 F.R.D. 351, 364 (E.D. Pa. 2013) ("[B]ecause a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement.").

c)      **Range of Reasonableness of Settlement Fund**

These factors focus on "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing...compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322 (citation omitted). The ultimate question is "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "However, there is no specific formula, threshold, or equation that a Court must use to determine whether a settlement amount is reasonable. Even a settlement that is

9

only a 'fraction of the potential recovery' can be deemed appropriate." *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *39 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Zynerba's stock price fell 21.77% on September 18, 2019 after Defendants reported that 96% of BELIEVE 1 trial participants suffered TEAEs, 60% suffered TRAEs and of 48 trial participants, 10 reported SAEs. Plaintiffs contend that a significant portion of this price drop was attributable to the revelation of fraud. Assuming that Plaintiffs could have recovered for 100% of the September 18, 2019 decline, recoverable damages for the entire Class Period would be approximately $38.5 million for the estimated 16.1 million Zynerba shares that were damaged. The $4 million settlement amount thus reflects approximately 10.4% of the estimated maximum recoverable damages in this case, which is within the range of possible approval. *See, e.g., In re AT & T Corp.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *cf.* Dr. Renzo Comoli & Svetlana Starykh, NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review* at 32 (Jan. 20, 2015), http://www.nera.com/content/dam/nera/publications/2015/Full_Year_Trends_2014_0115.pdf (noting that, in securities class actions with $100-$200 million of investor losses, the median settlement between 1996 and 2014 was for 3.3% of investor losses).

### d)    The Plan of Allocation is Fair and Reasonable

Plaintiffs have proposed a plan to allocate the net proceeds of the Settlement among Settlement Class Members, which was described in the Notice mailed to Class Members. The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to

those Settlement Class Members who suffered economic losses as a result of the Defendants' allegedly false and misleading statements. The $4 million in cash, less attorneys' fees and expenses, notice and administration expenses, and any tax expenses payable from the Settlement Fund (the "Net Settlement Fund"), will be distributed to Authorized Claimants in accordance with the Plan of Allocation.

A plan of allocation must be "fair and reasonable as to all participants in the fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (citation omitted). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Id.* at 328. The proposed Plan of Allocation is fair and reimburses class members based on the type and extent of their injuries. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss attributable to the alleged fraud. Pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation "differentiat[e] within a class based on the strength or weakness of the theories of recovery." *Id.* Long Notice, attached as Exhibit C to Evans Decl., at 10-11.

Here, the proposed Plan of Allocation related to the Action is rational and consistent with Plaintiffs' theory of the case. The Plan was formulated by Plaintiffs' Counsel, in consultation with SCS, with the goal of reimbursing the class members in a fair and reasonable manner, and reviewed by Plaintiffs. For these reasons, Plaintiffs' Counsel believes the Plan of Allocation fairly compensates the class members and should be approved.

### C.    CERTIFICATION OF THE CLASS IS APPROPRIATE

The parties have stipulated to the certification, for settlement purposes only, of the following Rule 23(b)(3) class:

All persons and entities who purchased or otherwise acquired Zynerba securities

11

between March 11, 2019 and September 17, 2019, both dates inclusive, and excludes (i) the Defendants; (ii) the officers and directors of Zynerba during the Settlement Class Period; (iii) the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons; (iv) any entity in which any Defendant has or had a controlling interest during the Settlement Class Period; and (v) all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested that the Court certify the Settlement Class for settlement purposes so that notice of the proposed Settlement, the final approval hearing, and the rights of class members to request exclusion, object, or submit proofs of claim could be issued. In its Preliminary Approval Order entered on May 12, 2021, (ECF No. 44), this Court preliminarily certified the Settlement Class. Nothing has changed to alter the propriety of the Court's certification and, for all the reasons stated in Plaintiffs' MOL ISO  Preliminary Approval (ECF No. 42-1), incorporated herein by reference, Plaintiffs now request that the Court reiterate its prior certification (i) of the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); and (ii) of Plaintiffs as Class Representatives, as well as its appointment of Plaintiffs' Counsel as Class Counsel for the Settlement Class.

### D.     NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Before finally approving a settlement, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1). A notice program must provide the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (citing Fed. R. Civ. P. 23 (c)(2)).

Both the substance of the Postcard Notice and the means of dissemination satisfied these standards. The Court-approved notice includes all the information required by Rule 23 (c)(2)(B)

and the PSLRA, 15 U.S.C. § 77z-1(a)(7), 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt out of the Class; (viii) how to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and (ix) the binding effect of a judgment on Class members. *See* Evans Decl., Ex. A.

The notice program was carried out by SCS, a nationally-recognized third-party claims administrator, under the supervision of Plaintiffs' Counsel. In accordance with the Court's orders, the Summary Notice was published on June 7, 2021, the Notice and Proof of Claim have been mailed to 24,807 potential Class members and nominees, and Nominee Account Holders emailed 15,905 potential Settlement Class Members. *See* Evans Decl. ¶¶ 4-7. Since May 28, 2021, the Notice, Proof of Claim, Stipulation of Settlement, and other documents have been posted at www.strategicclaims.net/zynerba, and SCS has maintained a toll-free telephone number to answer any questions from Class members. *Id*. ¶¶ 11-12. To date, not a single Class member has objected to the Settlement or requested exclusion from the Class. *Id*. ¶¶ 13-14.

This combination of individual first-class mail to all Class members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, transmitted over the newswire, and posted on the internet, was "the best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B); *see Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated: July 27, 2021

Respectfully submitted,

**ROSEN LAW FIRM**

/s/ Jacob A. Goldberg
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046 Telephone:
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com


Jing Chen
**ROSEN LAW FIRM**
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
        taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811

14

Email: pdahlstrom@pomlaw.com

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Settlement Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs and the Proposed Settlement Class*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this on July 27, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the Parties registered to the Court's CM/ECF system.

<u>/s/ Jacob A. Goldberg</u>
Jacob A. Goldberg

16