**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT WHITELEY and HARRY BERGER, Individually and on behalf of all others similarly situated, | Case No: 2:19-cv-04959-NIQA |
| Plaintiffs, | Hon. Nitza I. Quiñones Alejandro |
| v. | |
| ZYNERBA PHARMACEUTICALS, INC., ARMANDO ANIDO, and JAMES E. FICKENSCHER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND COMPENSATORY AWARDS TO LEAD PLAINTIFFS**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    ARGUMENT.........................................................................................................3

    A.    The Application for an Award of Attorney's Fees and Reimbursement of
            Expenses Is Reasonable and Should be Approved ................................................. 3

          1.    Plaintiffs' Counsel Is Entitled To A Fee From The Common Fund It
                    Obtained ................................................................................................. 3

          2.    Plaintiffs' Counsel Fees Should Be Calculated Based Upon A
                    Percentage of the Common Fund................................................................ 5

    B.    The *Gunter* Factors Favor The Requested Fee Award........................................... 6

          1.    The Fund Is Substantial and Confers a Benefit Upon The Class
                    Members ................................................................................................. 7

           2.    To Date No Class Member Has Requested Exclusion or Objected to
                    the Settlement.......................................................................................... 8

          3.    Plaintiffs' Counsel Prosecuted This Action With Skill And Efficiency..... 9

          4.    The Complexity, Expense, and Likely Duration of Litigation Weigh in
                    Favor of Plaintiffs Counsel's Request ...................................................... 11

          5.    Plaintiffs' Counsel Undertook The Risk of Non-Payment ...................... 13

          6.    Plaintiffs' Counsel Spent Significant Time Investigating and Litigating
                    the Case................................................................................................. 14

          7.    The Requested Fee Is Consistent With Awards in Similar Cases ............ 14

          8.    The *Prudential* Factors ............................................................................. 15

    C.    Lead Plaintiff Negotiated Attorneys' Fees From the Outset of the Litigation ..... 16

    D.    A Lodestar Cross-Check Confirms That The Fee Request Is Reasonable............ 17

III.    PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY
        TO LITIGATE THIS ACTION ..........................................................................20

IV.    THE PROPOSED COMPENSATORY AWARDS TO PLAINTIFFS ARE
        REASONABLE ..................................................................................................21

V.    CONCLUSION..................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ................................................................................................ 4

*Aponte v. Comprehensive Health Mgmt., Inc.*,
No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...................................... 18

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................. 19, 21

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................. 5, 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................. 3, 4

*Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.),*
494 F.2d 799 (3d Cir. 1974) .......................................................................................... 11

*Chemi v. Champion Mortg.*,
No. 2:05-CV-1238(WHW), 2009 WL 1470429 (D.N.J. May 26, 2009) ................................... 9

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................... 14

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) .................................................................................... 15

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................... 4

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ....................................................................................... 6, 14

*Hall v. AT & T Mobility LLC*,
No. CIV.A. 07-5325 JLL, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ........................... 9, 11, 21

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 22

*In re Aetna Inc.*,
No. CIV. A. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ....................................... 17

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ......................................................................................... 9

ii

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006)..................................................................................... passim

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 07-MD-01871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)................................................. 4

*In re BP p.l.c. Sec. Litig.*,
  852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................................. 13

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)............................................................................................ 7, 17

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)......................................................................................... 3, 5, 17

*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002) ..................................................................................... 20

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................... 7

*In re CIGNA Corp.*,
  No. CIV.A. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007)........................................ 15

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003) .................................................................................. 11

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009)................................................................................................ 5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)......................................................................................... 6, 11, 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................... 12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)................................... 12

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................................. 5, 11, 13, 16

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
  No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ................................ 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................................... 19

iii

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................ 6, 9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................................... 8

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997)................................................................................................. 9

*In re Par Pharm. Sec. Litig.*,
No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ........................... 11, 22, 23

*In re Processed Egg Prod. Antitrust Litig.*,
No. 08-MD-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) .............................................. 16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)............................................................................................. passim

*In re Ravisent Techs., Inc. Sec. Litig.*,
No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................... 14, 19

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03-0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005)......................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)........................................................................................... 5, 17, 18

*In re RJR Nabisco, Inc. Sec. Litig.*,
No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .............................................. 16

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. CIV.A. 04-374 JAP, 2008 WL 9447623 (D.N.J. Dec. 9, 2008) ....................................... 17

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) .............................. 13, 22

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
No. 315CV07658MASLHG, 2020 WL 3166456 (D.N.J. June 15, 2020)........................... 13, 17

*In re Vicuron Pharms. Inc. Sec. Litig*,
512 Supp. 2d at 279, 287 (E.D. Pa. 2007) .............................................................................. 15

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964)................................................................................................................... 4

*Katz v. China Century Dragon Media, Inc.*,
No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) .................. 16, 21

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................... 10

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................ 7

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................. 5, 19

*Meijer, Inc. v. 3M*,
    No. CIV.A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006) ......................................... 19

*Milliron v. T-Mobile USA, Inc.*,
    No. 08-cv-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .................................................... 14

*Neuberger v. Shapiro*,
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ..................................................... 12

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............................. 10

*Rowe v. E.I. DuPont de Nemours & Co.*,
    No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) ............................ 7

*Schuler v. Medicines Co.*,
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ..................... 14, 16, 19, 22

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ............................................................. 10

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
    No. CIV.A. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) ........................................ 19

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................. 4

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ........................................................ 13

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................. 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................. 19

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..................... 7, 10, 19

**Statutes**

15 U.S.C. § 78u-4(a)(4) .................................................................................................... 21

15 U.S.C. § 78u-4(a)(6) ...................................................................................................... 5

**Other Authorities**

H.R. Conf. Rep. No. 369.................................................................................................. 21

## I.    INTRODUCTION

Lead Plaintiffs Scott Whiteley and Harry Berger ("Plaintiffs") respectfully submit this memorandum in support of their Motion For an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Awards to Lead Plaintiffs.[1]

The Parties have reached a settlement to resolve the claims in the above-captioned securities class action (the "Action") for $4,000,000 (the "Settlement"). The Settlement is a highly favorable result, as it recovers representing at least 10.4% of the most likely recoverable damages despite significant risk, which is well within the range of reasonableness for class action settlements.[2] Having achieved this guaranteed cash recovery, Plaintiffs' Counsel seek an award of attorneys' fees of one third (1/3) of the Settlement Amount, or $1,333,333.

Litigants who create a common fund for the benefit of a class are entitled to a payment of attorneys' fees and expenses from the common fund. In the Third Circuit, courts typically award a percentage of the common fund. While the evaluation is holistic and fact-bound, the main factors courts consider in setting the percentage award are (1) the quality of the result, (2) the risk undertaken, and (3) the class's reaction. Courts also cross-check the award against the time and effort counsel expended.

Each of these metrics weighs in favor of an attorneys' fee award of one third of the Settlement Amount. As more fully set out in the Memorandum In Support of Motion for Final

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation of Settlement dated April 30, 2021 (the "Stipulation") (ECF. No. 43).

[2] This estimate is based on the decline in Zynerba's share price on September 18, 2019, net of market and industry-wide effects, following the Company's announcement of the results of Phase II clinical testing of Zygel designed to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE"), multiplied by the number of Zynerba shares purchased by Class Members during the Class Period and still held by as of that date, as constrained by the 90-day lookback provision of the PSLRA.

Approval of Settlement and Plan of Allocation (the "Final Approval Brief"), the Settlement is a reasonable result.

The Settlement was reached after substantive settlement discussions, a full-day mediation before well-regarded Mediator Michelle Yoshida, and further negotiations. The arm's-length negotiations resulted in the highly favorable $4,000,000 Settlement recovering approximately 10.4% of the Settlement Class's $38.5 million estimated damages. This Settlement is particularly beneficial to the Settlement Class Members in light of several obstacles Plaintiffs faced, including: the amount of potentially recoverable damages; Defendants' potential defenses; the risks of prosecuting this litigation through trial; defenses to Zynerba Pharmaceuticals, Inc.'s ("Zynerba" or the "Company") insurance coverage; and potential barriers to recovery created by Zynerba's financial condition, due to the uncertainty for Zynerba's sole product Zygel to receive FDA approval and to be commercialized.

Indeed, this was a risky case, as the Private Securities Litigation Reform Act of 1995 (the "PSLRA") imposes substantial obstacles to any case alleging securities fraud. Despite all of the risks, however, Plaintiffs' Counsel was able to recover a substantial settlement for the Class. The Class plainly approves of Plaintiffs' Counsel's work. Although objections and requests for exclusion are not due until August 10, 2021, to date, no Settlement Class Member has objected to the fee request, or any aspect of the Settlement, and no Class Member has requested exclusion from the Settlement. *See* Declaration of Sarah Evans Concerning (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report On Requests For Exclusion and Objections ("Evans Decl."), attached as Exhibit 1 to the Declaration of Tamar A. Weinrib in Support of Motions for: (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys'

2

Fees, Reimbursement of Expenses, and Compensatory Awards to Plaintiffs ("Weinrib Decl."), ¶¶ 13-14.

Plaintiffs' Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the total amount of $37,259.11. This amount includes $**5,692.24** incurred by Co-Lead Counsel The Rosen Law Firm, P.A. ("Rosen Law"),[3] and $31,566.87 incurred by Co-Lead Counsel Pomerantz LLP ("Pomerantz", and together with Rosen Law as "Plaintiffs' Counsel"). These expenses, including court filings fees, expert fees, and mediation fees, were both reasonable and necessary for the successful prosecution of the Actions and resolution of the claims against Defendants.

Finally, Plaintiffs' Counsel seeks compensatory awards totaling $15,000 (or $7,500 to each of the Lead Plaintiffs). The total compensatory award of $15,000 is reasonable and in line with similar awards granted in other matters for the time Lead Plaintiffs have spent for Zynerba's shareholders.

## II.        ARGUMENT

### A.        The Application for an Award of Attorney's Fees and Reimbursement of Expenses Is Reasonable and Should be Approved

#### 1.        Plaintiffs' Counsel Is Entitled To A Fee From The Common Fund It Obtained

The Supreme Court and the Third Circuit have both recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g. Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp.*

---

[3] *See* the Declaration on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl.") and the Declaration of Tamar A. Weinrib on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Weinrib Fee Decl."), attached as Exhibits 2-3 to the Weinrib Declaration.

3

*Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a common fund are entitled to compensation") (internal quotations omitted); *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The common fund doctrine is also designed to prevent unjust enrichment of class members who benefit from a lawsuit without paying for its costs. *See Boeing Co.*, 444 U.S. at 478; *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012).

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […]."*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013). The meritorious private actions the Court refers to are largely class actions; *Amgen*, the case *Amgen* quoted (*Tellabs*),[4] and the two cases *Tellabs* relied upon for the proposition quoted in *Amgen Inc.*, 568 U.S. 455 were all securities class actions.[5] Thus, public policy favors granting counsel in securities class actions fees sufficient to reward counsel for bringing these actions and to encourage them to keep doing so. *In re Worldcom, Inc. Sec. Litig.*, 388 Supp.2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). The "essential supplement" of private securities enforcement depends on adequate common fund attorneys' fee awards.

---

[4] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

[5] *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *J. I. Case Co. v. Borak*, 377 U.S. 426, 427 (1964).

Here, Plaintiffs' Counsel created a common fund for the Class. Paying Plaintiffs' Counsel's reasonable fees from that fund properly compensates counsel for bringing and pursuing the claims in this case and furthers the purpose of the securities laws.

### 2.     Plaintiffs' Counsel Fees Should Be Calculated Based Upon A Percentage of the Common Fund

Plaintiffs' Counsel's efforts created a common fund of $4,000,000. The Supreme Court consistently has held that the percentage-of-recovery approach is the preferred method for determining attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16 (1984). Like the Supreme Court, the Third Circuit also favors use of the percentage-of-recovery method, "because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (*quoting In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) ("*Prudential*"); *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) (percentage of recovery method "generally favored" and applying common fund doctrine). The use of the percentage of recovery method also comports with the language of the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class…." 15 U.S.C. § 78u-4(a)(6); *Cendant*, 404 F.3d at 188 ("the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (when drafting the PSLRA, Congress "indicated a preference for the use of the percentage method").

Finally, the alternative – the lodestar method – encourages attorneys to delay settlement and wastes courts' time in reviewing thousands of billing records *In re Ikon Off. Sols., Inc., Sec.*

5

*Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000). The lodestar method, rather, is the appropriate method for statutory fee shifting cases and cases involving intangible rights or other benefits that are difficult to quantify. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). Courts should not use the lodestar method in common fund cases with cash settlements. *Id.*

Accordingly, this Court should use the percentage method.

**B.      The *Gunter* Factors Favor The Requested Fee Award**

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), the Third Circuit established seven factors to employ in determining an appropriate fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.*at 195 n.1 (citing *Prudential*, 148 F.3d at 336-40). In *Prudential*, the Third Circuit identified three additional factors to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.  *In re AT & T Corp.*, 455 F.3d at 165 (citing *Prudential*, 148 F.3d at 338). These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1; *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) ("The Court may give some of these factors less weight in evaluating a fee award."). As discussed below, the factors support an award of  one third of the Settlement Fund.

### 1.    The Fund Is Substantial and Confers a Benefit Upon The Class Members

In evaluating the first *Gunter* factor, courts "consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *20 (D.N.J. Nov. 10, 2016) (*quoting Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).

The Settlement is a favorable result to Zynerba shareholders as it recovers 10.4% of estimated damages of $38.5 million. According to Cornerstone Research, between 2011 and 2019, cases with maximum damages between $25 million and $74 million, like this one, settled for a median of 7.6% of total damages. In 2020, the median recovery of potential damages was 5.3%. Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, at 6 (Cornerstone Research 2021).[6]  The Settlement thus recovers *nearly double* the median percentage of damages recovered in 2020, and more than those recovered between 2011 and 2019. The Settlement also compares favorably to similar settlements in the Third Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *AT & T Corp.*, 455 F.3d at 169 (affirming settlement for 4% of total damages); *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 319, 339 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (approving settlement for 5.35% of estimated damages, overruling objections, and collecting cases approving "class settlements involving far smaller percentage recoveries"); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of

---

[6] *Available at* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

7

estimated losses recovered in securities fraud class [action] settlements since 1995"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery of maximum damages). Accordingly, the $4,000,000 Settlement is an excellent recovery for this Action.

### 2. To Date No Class Member Has Requested Exclusion or Objected to the Settlement

The Notice[7] informed investors that Plaintiffs' Counsel would request attorneys' fees of up to one-third of the Settlement Amount ($1,333,333.33). *See* Evans Decl. Exs. A, B, C The Notice also advised Settlement Class Members that they could object to the attorneys' fees and the Long Notice explained the procedure for doing so. *Id.* at Ex. E, ¶15. The Claims Administrator mailed 24,807 copies of the Postcard Notice to Class Members. Evans Decl. ¶6. SCS was notified by one of the Nominee Account Holders that they emailed a total of 15,805 of their customers to notify them of this settlement and to provide either the Publication Notice or to provide direct links to the Long Notice and Claim Form on the Settlement webpage.  One other Nominee Account Holder provided SCS with the names and email addresses for 100 of their clients who were potential Settlement Class Members, and SCS promptly emailed links to the Long Notice and Claim Form to these potential Settlement Class Members. To date, a total of 15,905 emailed notices have been sent for the Settlement. Evans Decl. ¶7. *Id*, ¶7.  Although objections and requests for exclusion are not due until August 10, 2021, to date no Settlement Class Member has objected to the attorneys' fees or expenses requested. Additionally, no Settlement Class Member has indicated any interest in opting out and asked for instructions or submitted any request for exclusion from the Settlement.

---

[7] "Notice" includes the Notice of Pendency and Proposed Settlement of Class Action (the "Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement (the "Publication Notice"), and the Postcard Notice, submitted as Exhibits B, C, and D to the Stipulation (ECF. Nos. 43-2, 43-3 and 43-4).

Evans Decl. ¶¶13-14. The Settlement Class' positive reaction strongly supports the fee request. *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (holding that "relatively low objection rate 'militates strongly in favor of approval of the settlement'"); *Chemi v. Champion Mortg.*, No. 2:05-CV-1238(WHW), 2009 WL 1470429, at *4 (D.N.J. May 26, 2009) (lack of objections and single opt-out weighed strongly in favor of settlement).

### 3.    Plaintiffs' Counsel Prosecuted This Action With Skill And Efficiency

The skill and efficiency factor under *Gunter* also weighs heavily in favor of the requested award. Plaintiffs' Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT & T Mobility LLC*, No. CIV.A. 07-5325 JLL, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

"[T]he single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Ocean Power*, 2016 WL 6778218, at *27 (internal quotation omitted). In the face of dwindling resources and determined opposition, Plaintiffs' Counsel secured a settlement that recovers for the Class approximately 10.4% of the most likely recoverable damages. This highly favorable result supports the requested fee. *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 131 (D.N.J. 2002) ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained") (internal quotations omitted).

Plaintiffs' Counsel's experience and expertise are described in their firm resumes attached as Exhibit A to the Goldberg Fee Declaration and Exhibit A to the Weinrib Fee Declaration.[8] As their firm resumes show, Plaintiffs' Counsel are highly experienced in the complex field of

---

[8] Rosen Law's firm resume is attached as Exhibit A to the Kim Fee Decl. and Wolf Popper's firm resume is attached as Exhibit A to the Finkel Fee Decl.

9

securities fraud class action litigation and have obtained numerous successful recoveries on behalf of investor classes. Courts throughout the country, including in this district, have acknowledged Co-Lead Counsel Rosen Law's experience. *See e.g., Yedlowski*, 2016 WL 6661336, at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, No. 620CV357ORL31GJK, 2020 WL 3259749, at *2-3 (M.D. Fla. May 27, 2020), report and recommendation adopted sub nom. *In Re Tupperware Brands Corp. Sec. Litig.*, No. 620CV357ORL31GJK, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that Rosen Law is "well-credentialed" with "significant securities litigation experience"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation"). Similarly, Co-Lead Counsel Pomerantz is also highly experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662, Opinion and Order, at 14, (ECF No. 428, February 2, 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation." Pomerantz, as sole Lead Counsel for the class, achieved a historic $2.95 billion settlement, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) ("The Pomerantz firm has a strong

10

reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification."). Rosen Law and Pomerantz applied the same skill and determination in this action.

"The quality of opposing counsel is also important in evaluating the quality of counsel's work." *Hall*, 2010 WL 4053547, at *19; Ikon, 194 F.R.D. at 194 (same). Defendants were represented by DECHERT LLP, one of the world's premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients.  The fact that Plaintiffs' Counsel achieved this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003).

Thus, the quality of Plaintiffs' Counsel representation in a complex, risky case strongly supports the requested fee.

### 4.    The Complexity, Expense, and Likely Duration of Litigation Weigh in Favor of Plaintiffs Counsel's Request

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation" and favors the requested fee. *General Motors*, 55 F.3d at 812 (*quoting Bryan v. Pittsburgh Plate Glass Co. (PPG Indus.)*, 494 F.2d 799, 801 (3d Cir. 1974)). This *Gunter* factor also assesses "the complexity, expense, and likely duration of the litigation." *See AT&T Corp.*, 455 F.3d at 165.

Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on, at least, questions of damages and loss causation. *See, e.g., In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) ("Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate."); *In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *3 (D.N.J.

11

May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("A securities case, by its very nature, is a complex animal") (internal quotations omitted). This case was no different.

In the absence of the Settlement, this Action would have necessitated complex, expensive, and lengthy litigation. Defendants would have defended this litigation vigorously, as demonstrated by their motion to dismiss and motion for reconsideration.  Defendants would have likely opposed Plaintiffs' anticipated motion for class certification, filed motions for summary judgment, and ultimately appealed any judgment in Plaintiffs' favor. The Parties also likely would have engaged in lengthy and costly expert discovery, involving expert reports, depositions, and motions to disqualify expert witnesses through complex *Daubert* motions. Plaintiffs' claims involve numerous complex legal and factual issues requiring extensive expert testimony about FDA procedures and arcane medical, scientific, statistical, and economic issues, which would add to the expense and duration of the litigation. This Court and the jury at trial would have had to weigh evidence pertaining to complex factual and legal issues, as well as weigh difficult issues in a battle of experts, all of which strongly favor settlement. .  *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at \*16 (S.D.N.Y. Dec. 19, 2014) ("Over the last five years, nearly 48% of all securities class actions have been dismissed on motions prior to trial, while plaintiffs who succeeded at trial have found their judgments overturned on post-trial motions or appeal"); see also *Prudential*, 148 F.3d at 318 ("[T]he trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. The prospect of such a massive undertaking clearly counsels in favor of settlement."); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) (difficulty of presenting

12

issues involving extensive expert testimony at trial weigh in favor of settlement); *Ikon*, 194 F.R.D. at 179 (same).

Considering the magnitude, expense, and complexity of these actions, Plaintiffs' Counsel's fee request is quite reasonable. Accordingly, this factor weighs in favor of the requested fee.

### 5.      Plaintiffs' Counsel Undertook The Risk of Non-Payment

Plaintiffs' Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no or very little recovery and leave them uncompensated for their time, as well as for their out-of-pocket expenses. Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *28 (D.N.J. Oct. 1, 2013).

The risk of non-payment is especially high in securities class actions, as they are "notably difficult and notoriously uncertain." *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 315CV07658MASLHG, 2020 WL 3166456, at *13 (D.N.J. June 15, 2020) (risk of non-payment supported fee request and finding that "recovery was uncertain due to the difficulty of prevailing in securities cases generally."). Legal precedents are continually making it more difficult to plead securities class actions. *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Here, Plaintiffs' Counsel undertook this litigation on a contingency basis, with no guarantee their time or expenses would be reimbursed. In assuming this responsibility, Plaintiffs' Counsel had to ensure that sufficient resources were dedicated to the prosecution of the Action. With an average lag time of several years for cases of this type to conclude, the financial burden

on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. In light of the difficulty of undertaking such a lawsuit, Plaintiffs' Counsel should be reimbursed for its time and expenses.

### 6. Plaintiffs' Counsel Spent Significant Time Investigating and Litigating the Case

The sixth *Gunter* factor looks at counsel's time devoted to the litigation. *Gunter*, 223 F.3d at 199. This factor is usually considered with the lodestar cross-check to look at reasonableness of counsel's requested fee. Accordingly, this factor is addressed in connection with the lodestar cross-check below.

### 7. The Requested Fee Is Consistent With Awards in Similar Cases

The one-third fee requested here is appropriate and well within the range of, even below, fees typically awarded as "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." *In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (collecting cases). While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. *General Motors*, 55 F.3d at 822. The requested fee is in the middle of the range of fees that have been granted in comparable securities class actions in the Third Circuit and around the country. *See, e.g., Milliron v. T-Mobile USA, Inc.*, No. 08-cv-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement);*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *12-13 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015); *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (awarding one-third of settlement as fees in case that settled before decision on motion to dismiss);

14

*In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third") (*quoting In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *15 (D.N.J. Nov. 9, 2005)); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 146 (E.D. Pa. 2000) (awarding one-third of settlement fund). In fact, NERA Economic Consulting has determined that for settlements less than $5 million, the median award of attorneys' fees is 30.% and with expenses 3.8%, between 2011 and 2020. Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year* Review, at 23. [9] Thus, the requested fee is reasonable.

### 8.    The *Prudential* Factors

The applicable *Prudential* Factors also weigh in favor of the requested fee. First, the Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, there was no governmental civil or criminal investigation or prosecution of the alleged securities fraud that produced helpful testimony, admissions, or findings and, accordingly, the entire value of the Settlement is attributable to the efforts undertaken by Plaintiffs' Counsel in this Action. This fact increases the reasonableness of the requested fee award as Plaintiffs' Counsel achieved the Settlement without any assistance. *See, e.g., AT&T*, 455 F.3d at 173; *In re CIGNA Corp.*, No. CIV.A. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007)*; In re Vicuron Pharms. Inc. Sec. Litig*. 512 Supp. 2d at 279, 287 (E.D. Pa. 2007).

---

[9] Available at https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf (Last visited July 27, 2021).

Secondly, the one third (1/3) requested fee is also consistent with typical fee awards in non-class cases. *See In re RJR Nabisco, Inc. Sec. Litig.*, No. 818 (MBM), 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern [contingent fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases."). If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Blum*, 465 U.S. at 903 n. *19  ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *also see Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery."). Plaintiffs' Counsel's fee of one third of the Settlement Fund comports with these private standards. *Schuler*, 2016 WL 3457218, at *10. Thus, this factor supports Plaintiffs' Counsel's fee request of one third of the Settlement Fund.

Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Prudential*, 148 F.3d at 340. This Settlement does not have any particular innovative terms because, as Plaintiffs' Counsel believes, an all-cash recovery is the best remedy for the injury suffered by the Settlement Class. In such circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

**C.     Lead Plaintiff Negotiated Attorneys' Fees From the Outset of the Litigation**

Before retaining Plaintiffs' Counsel's services at the very outset of the Action,, Lead Plaintiffs entered into retainer agreements with Plaintiffs' Counsel which explicitly state that plaintiffs' counsel may apply for a fee of up to 33 1/3% of the recovery plus disbursements, subject

16

to court approval. Such a fee agreed upon by a lead plaintiff at the outset of litigation is presumptively reasonable. *Valeant Pharm.*, 2020 WL 3166456, at *11; *Cendant*, 264 F.3d at 282 ("under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel."); *In re Royal Dutch/Shell Transp. Sec. Litig.*, No. CIV.A. 04-374 JAP, 2008 WL 9447623, at *24 (D.N.J. Dec. 9, 2008) (presumption of fairness when lead plaintiff approves fee consistent with fee agreement with lead counsel). As discussed in each of their declarations, each Plaintiff approved of and support Plaintiffs' Counsel's request for one third of the Settlement Fund (See Exhibits 4-5 to the Weinrib Decl.). Thus, the fee request is reasonable and should be approved.

###### D.    A Lodestar Cross-Check Confirms That The Fee Request Is Reasonable

A lodestar cross-check is a tool to "ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Cendant*, 404 F.3d at 188. The requested fee award here is reasonable and in line with fee requests approved in this Circuit.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid*, 396 F.3d at 305. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work," *id.* at 305–06, and "to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *In re Aetna Inc.*, No. CIV. A. MDL 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001). To perform the cross-check, district courts must divide the proposed fee award by the lodestar calculation, which will yield a lodestar multiplier. *AT&T Corp.*, 455 F.3d at 164. This calculation "need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries

17

submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306–07 (footnote omitted).

Since the inception of the case, Plaintiffs' Counsel's lodestar, *i.e.*, the value of its work had it been paid on an hourly basis is $679,844 for 862.99 hours. Specifically, Co-Lead Counsel Rosen expended 555.8 hours with the value of $441,235. *See* Goldberg Fee Decl. ¶5. Co-Lead Counsel Pomerantz expended 307.19 hours with the value of $238,609. Weinrib Fee Decl. ¶5. Among other things, Plaintiffs' Counsel thoroughly investigated the case, including (a) conducting an extensive factual investigation, which included the review of publicly available documents about Zynerba and the individual defendants and filed the initial complaint in the United States District Court for the Eastern District of Pennsylvania; (b) briefing the motion for appointment of lead plaintiff and lead counsel; (c) researching, drafting and filing the operative Amended Complaint; (d) consulting with a damages expert; (e) contacting potential witnesses; (f) consulting with a private investigator relating to the allegations in this Action; (g) participating in an in-person mediation with the mediator, including drafting a detailed mediation statement; (h) continuing settlement negotiations after the mediation to materialize the settlement-in-principal; (i) reaching an eventual agreement on the terms of a settlement; (j) negotiating the written settlement documents; (k) presenting those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (l) overseeing the provision of Notice to the proposed settlement class and monitoring the work of the selected Claims Administrator. Plaintiffs' Counsel will also necessarily expend additional hours and resources to assist Settlement Class Members with their Claim Forms, shepherd the claims process, and respond to Settlement Class Members' inquiries. *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time

18

and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

The multiplier generated here by the ratio of Plaintiffs' Counsel's requested fee of $1,333,333.33 to Plaintiffs' Counsel's lodestar is 1.96. This multiplier is consistent with, and well within the range of, those approved and acknowledged as reasonable within this Circuit and around the country. *See, e.g.*, *In re AT & T Corp.*, 455 F.3d at 173 ("[W]e approved of a lodestar multiplier of 2.99 in *Cendant PRIDES,* in a case we stated 'was neither legally nor factually complex'" and that settled in 4 months); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. CIV.A. 03-4578, 2005 WL 1213926, at *18 (E.D. Pa. May 19, 2005) (approving lodestar multiplier of 15.6); *Schuler*, 2016 WL 3457218, at *9–10 (lodestar multiplier of 3.57 resulting in fee award of 33 $^{1/3}$% reasonable in case that settled before decision on motion to dismiss); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving lodestar multiplier of 3.97); *Meijer, Inc. v. 3M*, No. CIV.A. 04-5871, 2006 WL 2382718, at *24 (E.D. Pa. Aug. 14, 2006) (approving lodestar multiplier of 4.77 resulting in fee award of 33.33% of settlement fund); *Ravisent*, 2005 WL 906361 ("Lodestar multiples of less than four are well within the range awarded by courts in this Circuit"); *Yedlowski*, 2016 WL 6661336, at *18 (3.4 multiplier).

Plaintiffs' Counsel should not be penalized for their efficiency, particularly in light of the large percentage of damages the Settlement recovers. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (awarding fee of one-third of settlement fund amounting to a 6.3 lodestar multiplier because the fee award "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where [] the settlement amount is substantial."). Indeed, one of the main advantages of the percentage method is to reward early settlement. *Id.* (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002); *See Maley*, 186 F. Supp. 2d at 363–64,

19

373 (awarding 33.3% of $11.5 million settlement, reflecting a multiplier of 4.65, in a case that settled after one year of litigation, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system").

### III.     PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO LITIGATE THIS ACTION

"Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). The Notice to Class Members stated that Plaintiffs' Counsel may seek reimbursement of expenses not to exceed $125,000. Plaintiffs' Counsel respectfully requests that this Court reimburse the $37,259.11 of litigation expenses that counsel advanced in connection with this Action. This figure is comprised of $5,692.24 incurred by Rosen Law and $31,566.87 incurred by Pomerantz. *See* Goldberg Fee Decl. ¶7; Weinrib Fee Decl. ¶7. All of these expenses were reasonably incurred and necessary for the prosecution of this litigation. The bulk of Plaintiffs' Counsel's expenses consisted of fees for the mediation service of Michelle Yoshida, legal and factual research fees, fees for an investigator, and other incidental expenses incurred in the course of the litigation of the Actions. *See* Goldberg Fee Decl. ¶7; Weinrib Fee Decl. ¶7. The mediation was instrumental to achieving the Settlement. The legal research fees are used to research relevant case precedents for the purpose of opposing Defendants' motion to dismiss and motion for reconsideration. And the investigator aided in gathering facts to plead the case, as the PSLRA does not permit discovery before a decision on the motion to dismiss. The remainder of Plaintiffs' Counsel's expense were primarily court filing fees, online legal research fees, travel fees, and other miscellaneous expenses. Goldberg Fee Decl. ¶7; Weinrib Fee Decl. ¶7. Courts have held that these items are properly charged to the Class. *Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d at 344

20

(consultants and computer-assisted research); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of consultants."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) (mediator's fees); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) (notice to class members and press releases). The categories of expenses for which counsel here seek payment are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

## IV.  THE PROPOSED **COMPENSATORY** AWARDS TO PLAINTIFFS ARE REASONABLE

Plaintiffs' Counsel seeks a compensatory award of $7,500 to each of the Lead Plaintiffs for their lost time and effort and oversight of this action pursuant to the PSLRA. The Declarations of Scott Whiteley and Harry Berger, attached to the Weinrib Decl. as Exhibits 4-5 respectively, outline the time and tasks the Lead Plaintiffs devoted to this litigation, including filing a lead plaintiff motion, review of pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. As shown in their declarations, Plaintiffs were actively involved and put the concerns of the Class at the forefront.

While the PSLRA does not provide for incentive awards for a lead plaintiff to compensate them for their service as lead plaintiffs, it does acknowledge that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). "The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995). "[T]he Third Circuit favors encouraging class representatives,

21

by appropriate means, to create common funds and to enforce laws—even approving 'incentive awards' to class representatives." *In re Schering-Plough Corp. Enhance Securities Litigation*, 2013 WL 5505744, at \*56; *see also. Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at \*10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

The Notice informed Class Members that Plaintiffs' Counsel would seek a Compensatory Award to Lead Plaintiffs collectively not to exceed $15,000 (or $7,500 each). As no objections have been raised in response to these requests (Evans Decl. ¶¶14), Plaintiffs' Counsel requests that the Court award the requested amounts. Throughout this litigation, Plaintiffs were available to Counsel as needed and performed their duties with attentiveness and diligence; Plaintiffs: (1) volunteered to file a motion seeking appointment as lead plaintiff; (2) reviewed complaints, motions and other pleadings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; (4) gathered and produced information to Plaintiffs' Counsel concerning their Zynerba investments; (5) made themselves available to be deposed if needed, and to testify if there was a trial; and (6) discussed with Plaintiffs' Counsel the proposed settlement and approved the Settlement. These are the kinds of activities that warrant reimbursement for class representatives for their lost wages and business opportunities. *In re Schering-Plough Corp. Enhance Securities Litigation*, 2013 WL 5505744, at \*56 (reviewing pleadings, corresponding with Lead Counsel, and preparing for and attending mediation); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at \*11 (D.N.J. July 29, 2013) (similar); *Schuler*, 2016 WL 3457218, at \*11 (reviewed filings, conferred with lead counsel,

22

remained apprised about the case and the company).

Here, the Compensatory Awards to Plaintiffs amount to a small percentage of the Settlement Fund, and as such, are eminently reasonable and should be approved. Courts regularly make similar awards to lead plaintiffs. *Par Pharma.*, 2013 WL 3930091, at \*11 (awarding $18,000 to lead plaintiff); *Andavarapu v. iBio, Inc. et al.*, 14-cv-1434-RGA (Dkt. No. 69) (D. Del. April 21, 2016) (awarding $10,000 to lead plaintiff in case that settled before discovery.).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that this Court: (a) award Plaintiffs' Counsel their reasonable attorneys' fees in the total amount of $1,333,333.33; (b) reimburse Plaintiffs' Counsel for expenses and costs in the total amount of $37,259.11; and (c) grant Compensatory Awards to the Lead Plaintiffs collectively in the amount of $15,000 (or $7,500 each).

Dated: July 27, 2021

Respectfully submitted,

**ROSEN LAW FIRM**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com

**ROSEN LAW FIRM**
Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jchen@rosenlegal.com

*Co-lead Counsel for Lead Plaintiffs and the*

23

*Proposed Settlement Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
        taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
Email: pdahlstrom@pomlaw.com

*Co-lead Counsel for Lead Plaintiffs and the
Proposed Settlement Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiffs and
the Proposed Settlement Class*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this on July 27, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the Parties registered to the Court's CM/ECF system.


/s/ Jacob A. Goldberg
Jacob A. Goldberg

25