**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT WHITELEY and HARRY BERGER, Individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>ZYNERBA PHARMACEUTICALS, INC., ARMANDO ANIDO, and JAMES E. FICKENSCHER,<br><br>      Defendants. | Case No: 2:19-cv-04959-NIQA |

**DECLARATION OF TAMAR A. WEINRIB ON BEHALF OF CO-LEAD COUNSEL IN SUPPORT OF MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND PLAINTIFFS COMPENSATORY AWARDS**

I, TAMAR A. WEINRIB, declare as follows:

1.      I am an attorney duly licensed to practice law in New York and duly admitted to practice before this Court. I am a Partner at Pomerantz LLP Co-Lead Counsel with The Rosen Law Firm, P.A. for Plaintiffs and the Class in this litigation (the "Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I respectfully submit this declaration, pursuant to Rule 23 of the Federal Rules of Civil Procedure, in support of: (a) Plaintiffs'[1] request for final approval of the settlement of this Action; (b) Plaintiffs' request for final approval of the plan allocating the net settlement proceeds

---

[1] Lead Plaintiffs in this action are Scott Whiteley and Harry Berger (collectively, "Plaintiffs").

to the Class ("Plan of Allocation"); (c) Co-Lead Counsel's application for an award of attorneys' fees and expenses; and (d) Plaintiffs' request for Compensatory Awards.

3.      The defendants in this Action are Zynerba Pharmaceuticals, Inc. ("Zynerba" or the "Company"), Armando Anido, and James E. Fickenscher (collectively, "Defendants"). Plaintiffs allege claims against Defendants on behalf of a class consisting of all persons or entities that purchased or otherwise acquired Zynerba common stock between March 11, 2019 and September 17, 2019, both dates inclusive. (the "Class Period").[2]

4.      Plaintiffs have entered into a settlement, on behalf of themselves and the other members of the Class, with Defendants, which provides a recovery of $4,000,000 in cash to resolve this securities class action. The precise terms of the Settlement are fully set forth in the Stipulation of Settlement dated April 30, 2021 (the "Stipulation")[3] and previously filed with the Court. (ECF No. 43). This recovery represents approximately 10.4% of the mostly likely recoverable damages.

5.      Plaintiffs' Counsel (consisting of Co-Lead Counsel, Pomerantz LLP and The Rosen Law Firm, P.A.) and their professionals have spent, in the aggregate, 862.99 hours in the prosecution of this case against Defendants, with a market value or "lodestar" of $679,844. See Goldberg Fee Decl.; Weinrib Fee Decl.[4] . The fee of $1,333,333 sought in this case would therefore result in a multiplier of 1.96.

---

[2] Excluded from the Class are: (i) the Defendants; (ii) the officers and directors of Zynerba during the Settlement Class Period; (iii) the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons; (iv) any entity in which any Defendant has or had a controlling interest during the Settlement Class Period; and (v) all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

[3] Capitalized terms not otherwise defined in this declaration have the same meanings set forth in the Stipulation.

[4] "Goldberg Fee Decl." refers to the Declaration of Jacob A. Goldberg on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, attached hereto as Exhibit 2. "Weinrib Fee Decl." refers to the Declaration of Tamar A. Weinrib on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses, attached hereto as Exhibits 3.

6.      This declaration sets forth the work performed by Plaintiffs' Counsel throughout the litigation, which demonstrates that the litigation was vigorously prosecuted, and that the settlement was negotiated at arm's length by experienced and fully informed counsel. As such, the Settlement meets the criteria for approval, as amplified in the contemporaneously filed memorandum of law in support of the Settlement. The declaration also amply supports the award of fees, particularly in light of the modest multiplier, given the significant efforts undertaken by Plaintiffs' Counsel. See Memorandum of Law In Support Of Motion For An Award Of Attorneys' Fees And Expenses And Compensatory Awards To Plaintiffs, filed concurrently herewith.

7.      By the same token, as indicated herein, the Plan of Allocation is based on consultations with Strategic Claims Services ("SCS"), an expert in financial markets and securities litigation.

8.      Finally, the compensatory award of $7,500 to each of the Lead Plaintiffs (totaling $15,000) is supported by their consistent supervision and participation in this case, including their review of filings and conferring with Plaintiffs' Counsel regarding case strategy and during the mediation process.

## I.    PRELIMINARY STATEMENT

9.      This case was thoroughly investigated and has been vigorously litigated since its commencement. Plaintiffs' Counsel performed a significant factual investigation at the pleading stage. In this regard, Plaintiffs' Counsel thoroughly reviewed and analyzed publicly available information regarding Zynerba, including, but not limited to, its U.S. Securities and Exchange Commission ("SEC") filings, financial reports and press releases, as well as media reports about Zynerba and analysts' reports.

10.     Plaintiffs' Counsel also thoroughly researched the law pertinent to the claims and defenses asserted and engaged in ongoing communications with the Plaintiffs.

11.     The proposed Settlement is the culmination of two years of hard-fought litigation followed by vigorous arm's-length settlement negotiations, including a formal mediation session presided over by a highly respected mediator with substantial experience in the mediation of securities fraud lawsuits. The Settlement was reached only after Plaintiffs' Counsel had: (i) conducted an extensive independent investigation; (ii) filed two complaints; (iii) successfully opposed Defendants' motion to dismiss; and (iv) comprehensively prepared for and attended a mediation session.

12.     The proposed Settlement is a notable achievement derived from the substantial efforts of Plaintiffs and Plaintiffs' Counsel and is a very good result for the Class, particularly under the circumstances of the litigation. The Settlement is eminently fair, reasonable, and adequate based on the impediments to recovery, the legal hurdles and risks involved in proving liability and damages as well as the further risk, delay, and expense had this case proceeded to trial. In the face of these risks, a recovery of $4 million, derived from Plaintiffs' Counsel's efforts, represents a highly successful result. Co-Lead Counsel respectfully submits that under these circumstances, the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

13.     It is also respectfully submitted that the Court should approve the Plan of Allocation and award attorneys' fees in the amount of one-third of the Settlement Amount, plus expenses of $1,333,333.33 (itemized in Goldberg Fee Decl. and Weinrib Fee Decl., attached as Exhibits 2 and 3 hereto), to compensate Plaintiffs' Counsel for the considerable efforts in creating this substantial benefit on behalf of the Class, and as recognition for the risks faced and overcome.

14.     The Class appears to overwhelmingly approve the Settlement. Pursuant to the Court's Order preliminarily approving the Settlement of this Action on May 12, 2021 (the "Preliminary Approval Order") (ECF No. 44), the Claims Administrator, SCS, mailed Postcard Notice via first class mail with postage prepaid, to 37 individuals and organizations identified in the transfer agent records provided to SCS by Defendants' Counsel. Evans Decl.[5], ¶ 4.   The same day, SCS caused a letter to be mailed or e-mailed to 1,224 nominees contained in its proprietary master mailing list. *Id.,* ¶ 5. The letter notified them of the Settlement and requested that within 10 calendar days from the date of the letter, they either (a) send a Postcard Notice to their customers who may be beneficial purchasers/owners; (b) email an electronic version of the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing ("Publication Notice") or a direct link to the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice") and Proof of Claim and Release Form ("Claim Form", together with the Long Notice, "Long Notice and Claim Form") supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email addresses, to the extent email addresses were available, of such beneficial owners so that SCS could promptly mail the Postcard Notice or email links to the Long Notice and Claim Form directly to them. *Id.* As a result, to date SCS has mailed a total of 24,807 Postcard Notices. *Id.,* ¶ 6. Certain Nominee Account Holders notified SCS that they collectively emailed 15,905 potential Settlement Class Members to notify them of the Settlement and provide either the Publication Notice or direct links to the Long Notice and Claim Form on the Settlement webpage. *Id.,* ¶ 7.  Also on May 28, 2021, SCS sent the Depository Trust Company

---

[5] "Evans Decl." refers to the Declaration of Sarah Evans Concerning: (A) Mailing Of The Postcard Notice; (B) Publication Of The Publication Notice; and (C) Report On Requests For Exclusion And Objections, attached as Exhibit 1 hereto.

a Long Notice and Claim form to post on its Legal Notice system. *Id.,* ¶ 9. The time to file objections to the proposed Settlement, the Plan of Allocation, and the request for an award of attorneys' fees and expenses expires on August 10, 2021. As of the date of this declaration, not a single Class Member has filed an objection to any aspect of the Settlement or a request for exclusion.[6]

15.     Plaintiffs' Counsel has zealously and aggressively litigated this case for almost two years on a wholly contingent basis. The fee application of one- third of the Settlement Amount is fair, reasonable, and adequate, and warrants Court approval. This fee request is within the range of fees typically awarded in actions of this type and is wholly justified in light of the benefits obtained, the substantial risks undertaken, the time spent on this litigation, and the quality, nature, and extent of the services rendered, as more fully set forth in the Memorandum of Law In Support Of Motion For An Award Of Attorneys' Fees And Expenses And Compensatory Awards To Plaintiffs and the Memorandum of Law in Support of Final Approval of Class Action Settlement. In sum, the Settlement is the product of hard- fought litigation and protracted arm's-length negotiation and takes into consideration the risks specific to this case.

16.     The following sets forth the principal proceedings in this matter and the major legal services provided by Plaintiffs' Counsel, the negotiation of the Settlement, the terms of the Settlement, why the Settlement and the Plan of Allocation are fair and in the best interests of the Class, and the reasonableness of Plaintiffs' Counsel's fee and expense request.

---

[6] Should any timely objections be filed, Lead Counsel will address them in a reply brief.

## II.    SUMMARY OF THE CLAIMS

17.    This securities fraud class action alleges claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder on behalf of purchasers of Zynerba common stock during the Class Period.

18.    The Amended Complaint alleges that that during the Settlement Class Period, Zynerba conducted Phase II clinical testing of Zygel to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE") via a clinical trial called the "BELIEVE 1" trial. Zygel is a transdermal cannabinoid-based ("CBD") treatment, and Zynerba's only product in development. The Complaint alleges that: Defendants knew about but failed to disclose adverse events experienced by participants during the BELIEVE 1 trial; on September 18, 2019, Defendants reported that 96% of BELIEVE 1 trial participants suffered treatment emergent adverse events ("TEAEs"), 60% suffered treatment related adverse events ("TRAEs") and of 48 trial participants, 10 reported serious adverse events ("SAEs"); and, on this news, Zynerba's stock price fell $2.46 per share, or 21.77%, to close at $8.84 per share on September 18, 2019.

## III.    PROSECUTION OF THE CASE

19.    This Action was first filed on October 23, 2019 in the Eastern District of Pennsylvania. By order dated January 9, 2020, the Court appointed Scott Whiteley and Harry Berger as Lead Plaintiffs, and Pomerantz LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel.

### Pleadings and Motion Practice

20.    Following their appointment as Lead Plaintiffs, Plaintiffs undertook further investigation, which included review of public filings, analyst reports, consultation with experts, and interviews of confidential witnesses.

21.    Thereafter, Plaintiffs filed an Amended Complaint on March 9, 2020, which charged Defendants with the misconduct summarized above.

22.    Defendants moved to dismiss the Amended Complaint, arguing that the Amended Complaint failed to meet the PSLRA's high pleading bar. Plaintiffs' Counsel researched and drafted opposition papers vigorously challenging each Defendants' motion. On November 25, 2020, the Court denied Defendants' motions to dismiss ("MTD Order"). (ECF No. 31). Defendants moved for reconsideration of the MTD Order on December 9, 2020. Once again, Plaintiffs' Counsel researched and drafted papers vigorously opposing Defendants' motion. The Court denied the reconsideration motion on February 5, 2021 (ECF No. 38). Defendants filed their Answer to the Complaint on January 15, 2021 (ECF No. 36).).

**Mediation**

23.    Following the MTD Order, the parties agreed to mediate.

24.    In advance of thereof, the parties prepared comprehensive mediation statements setting forth the strengths of their cases and weaknesses of their adversaries which were submitted to Michelle Yoshida, Esq., a nationally recognized mediator with Phillips ADR Enterprises.

25.    Prior to the mediation, and throughout, Plaintiffs were consulted in order to apprise them of Plaintiffs' Counsel's assessment of case, and to provide authorization on the range for the settlement.

26.    The mediation was held on February 22, 2021after which the Parties reached an agreement in principle to settle the Action for $4 million for the benefit of the Settlement Class.

27.    The Parties memorialized the key terms of the settlement in a Memorandum of Understanding, dated February 26, 2021. The Parties continued to negotiate the terms of the Stipulation of Settlement until its execution on April 30, 2021.

28.     On April 30, 2021, Plaintiffs filed their motion for preliminary approval of the Settlement (ECF No. 42).

29.     The Court issued an order preliminarily approving the settlement on May 12, 2021 (ECF No. 44) and conditionally certifying the Class as consisting of:

> All persons and entities who purchased or otherwise acquired Zynerba securities between March 11, 2019 and September 17, 2019, both dates inclusive, and excludes (i) the Defendants; (ii) the officers and directors of Zynerba during the Settlement Class Period; (iii) the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons; (iv) any entity in which any Defendant has or had a controlling interest during the Settlement Class Period; and (v) all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

30.     The Court also directed that Co-Lead Counsel cause the mailing of the Notice to all potential Class Members identifiable with reasonable effort and cause the Summary Notice to be published on a national business newswire.

**<u>Notice of the Settlement</u>**

31.     The Evans Declaration, attached as Exhibit 1 hereto, attests that SCS has mailed a total of 24,807 Postcard Notices to potential Class Members and that certain Nominee Account Holders notified SCS that they collectively emailed 15,905 potential Settlement Class Members to notify them of the Settlement and provide either the Publication Notice or direct links to the Long Notice and Claim Form on the Settlement webpage.  Evans Decl*.,* ¶¶ 6-7.  Also, SCS sent the Depository Trust Company a Long Notice and Claim form to post on its Legal Notice system. *Id.,* ¶ 9.  SCS caused the Publication Notice to be published electronically once on the *GlobeNewswire* and in print once in the *Investor's Business Daily* on June 7, 2021. *Id.,* ¶ 10.

32.     The Notice informed Class Members of, among other things, the terms of the Settlement, the Plan of Allocation of the Settlement proceeds, and that Co-Lead Counsel would

apply for an award of attorneys' fees of one-third of the Settlement Amount, and expenses not to exceed $150,000.

33.     The Notice also provided that any objections to the Settlement, the Plan of Allocation, or the applications for attorneys' fees and expenses must be received by August 10, 2021. Although that date has not yet passed, as of the date of this declaration, to my knowledge, no objections have been filed or received by counsel by any member of the Class to the Settlement, the Plan of Allocation or to the request for attorneys' fees and expenses. Should any timely objections be received after the date of this submission, they will be addressed by Co-Lead Counsel in a reply brief.

### The Settlement Compared to the Range of Recovery

34.     The Settlement represents approximately 10.4% of likely recoverable damages based on the decline in Zynerba's share price on September 18, 2019, net of market and industry-wide effects, following the Company's announcement of the results of Phase II clinical testing of Zygel designed to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies ("DEE"), multiplied by the number of Zynerba shares purchased by Class Members during the Class Period and still held by as of that date, as constrained by the 90-day lookback provision of the PSLRA.  As noted in the accompanying memorandum of law, this is well above the typical range of recovery in securities fraud class actions. Moreover, this assumes that 100% of the eligible claimants will file claims on the Settlement Fund, which is never the case.

35.     Moreover, it is virtually certain that had Plaintiffs gone to trial, and received a favorable verdict, the recovery would never approach this amount given the limited funding

available for these claims. Indeed, going to trial ran the risk of significantly reducing, rather than increasing, any recovery.

## IV.   THE PLAN OF ALLOCATION

36.   Pursuant to the Preliminary Approval Order and as set forth in the Notice, all members of the Class who wish to participate in the distribution of the Net Settlement Fund must submit a valid, timely Proof of Claim and all required information by no later than July 30, 2021. As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, attorneys' fees and expenses, the remainder of the Settlement Fund, i.*e.,* the Net Settlement Fund, shall be distributed among Class Members who submit timely and valid Proofs of Claim ("Authorized Claimants") according to the Plan of Allocation.

37.   The Plan of Allocation is set forth in detail in the Notice and provides that Authorized Claimants will receive a pro rata share of the Net Settlement Fund based on the value of their recognized claim attributable to the alleged fraud.

38.   If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Authorized Claimants. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the value of the Authorized Claimant's recognized claim. If, however, as is more likely, the amount in the Net Settlement Fund is not sufficient to permit payment of the total recognized claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the recognized claims of all Authorized Claimants.

## V.   Co-Lead Counsel's Time and Expense

- 11 -

39.    Despite working on this matter for two years, Plaintiffs' Counsel has not received any payment for its services in prosecuting this litigation, nor has it been paid for its expenses incurred in the prosecution of the litigation.

40.    As set forth in the Memorandum of Law In Support Of Motion For An Award Of Attorneys' Fees And Expenses And Compensatory Awards To Plaintiffs, Co-Lead Counsel is requesting attorneys' fees in the amount of $1,333,333, or one-third of the Settlement Amount, and reimbursement of expenses in the amount of $37,259.11. The requested fee award of one-third is well within the range of fees awarded by courts in this District and throughout the country and is amply justified by the specific facts and circumstances in this case.

41.    Plaintiffs' Counsel achieved this excellent result for the Class at great risk and substantial expense to itself. Plaintiffs' Counsel was unwavering in its dedication to the interests of the Class and its investment of the time and resources necessary to bring this litigation to a successful conclusion against Defendants. Plaintiffs' Counsel's compensation for the services rendered has always been wholly contingent. The requested fee is reasonable based on the quality of Plaintiffs' Counsel's work and the substantial and certain benefit obtained for the Class.

42.    The prosecution of this Action required Plaintiffs' Counsel and their professional support staff to perform 862.99 hours of work over a period spanning two years and to incur $37,259.11 in expenses. *See* Goldberg Fee Decl., ¶¶ 5-8; Weinrib Fee Decl., ¶¶ 5-8, Exhibits 2-3.

43.    The resulting lodestar totals $679,844. Co-Lead Counsel's one-third fee represents a 1.96 multiplier.

44.    Plaintiffs' Counsel's work in this case will not cease after final approval of the Settlement, however. Plaintiffs' Counsel anticipates spending significant time assisting Class Members with claims administration issues and working with the Claims Administrator to ensure

a prompt distribution of the Net Settlement Fund to the Class. However, no further request for payment of fees will be sought.

45.     Thus, the amount requested by Co-Lead Counsel should be approved.

46.     The time, expenses and charges incurred in the prosecution of the Action are set forth in the declarations attached hereto as Exhibits 2 and 3. Plaintiffs' counsel declares that the expenses and charges are reflected in the books and records maintained by The Rosen Firm and Pomerantz and are an accurate recordation of them.

## VI.     Standing and Expertise of Plaintiffs' Counsel

47.     The monetary benefits obtained for Class Members from the Settlement of the litigation were due in large part to the high caliber of representation they received from Plaintiffs' Counsel.

48.     In over eighty-five years of securities litigation, Pomerantz has set important precedents that have vindicated and expanded investor rights. Courts routinely acknowledge Pomerantz's securities litigation strengths. At the hearing for preliminary approval of the $3 billion settlement in *In re Petrobras Securities Litigation*, Judge Jed S. Rakoff stated: "[T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world." The Legal 500 ranked Pomerantz as a 2021 Tier 1 Firm in Securities Litigation. The expertise and experience of Pomerantz is further described in the accompanying Weinrib Fee Decl., and Exhibit A attached thereto.

49.     The Rosen Firm has extensive experience litigating securities cases. ISS Securities Class Action Services ("ISS") ranked Rosen Law the number one firm for the number of securities class action settlements for 2017. Since 2013, Rosen Law has been ranked yearly by ISS as one of the top three firms in the nation as to the number of securities class action settlements obtained for

investors. The expertise and experience of The Rosen Firm is further described in the accompanying Goldberg Fee Decl., and Exhibit A attached thereto.

## VII. AWARD TO LEAD PLAINTIFFS

50. Attached hereto as Exhibit 3 are the declarations of Lead Plaintiffs outlining their activities in representing the Class in this matter. The Lead Plaintiffs devoted substantial time and effort to prosecuting this litigation, including time spent reviewing pleadings, motions, and other documents; communicating with counsel concerning the status of the case; and staying apprised of all developments in the case, including settlement discussions.

## VIII. CONCLUSION

For the reasons set forth above and in the accompanying Memorandum of Law in Support of Final Approval of Class Action Settlement and the Memorandum of Law In Support Of Motion For An Award Of Attorneys' Fees And Expenses And Compensatory Awards To Plaintiffs, I respectfully submit that: (a) the Settlement is fair, reasonable, and adequate, and should be finally approved; (b) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Class Members and should also be approved; and (c) the motion for an award for attorneys' fees and expenses and compensatory awards for each Lead Plaintiffs should be granted.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York this 27th day of July, 2021.

s/Tamar A. Weinrib
Tamar A. Weinrib

- 14 -