# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SCOTT WHITELEY and HARRY** | : | **CIVIL ACTION** |
| **BERER, individually and on behalf of** | : | |
| **all others similarly situated,** | : | **NO. 19-4959** |
| *Plaintiffs* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZYNERBA PHARMACEUTICALS,** | : | |
| **INC., *et al.*,** | : | |
| *Defendants* | : | |

SEPTEMBER 16, 2021

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a *motion for final approval of class action settlement and final determination that class certification for settlement purposes is appropriate*, [ECF 45], and a *motion for an award of attorneys' fees, reimbursement of expenses, and compensatory awards to lead plaintiffs*, [ECF 46], both filed by Plaintiffs Scott Whiteley and Harry Berger pursuant to Federal Rule of Civil Procedure ("Rule") 23.  Previously, this Court granted preliminary approval to the underlying class action settlement agreement (the "Settlement Agreement").  [ECF 44].  A hearing was held on August 31, 2021 (the "Fairness Hearing"), at which the Court heard oral argument on Plaintiffs' unopposed motion for final approval of the Settlement Agreement.  Counsel for all parties appeared.  For the reasons stated herein, the motion for final approval of the class action settlement and motion for attorneys' fees and expenses are both granted.

## BACKGROUND

Plaintiffs Scott Whiteley and Harry Berger, on behalf of themselves and all others similarly situated, brought this class action against Defendants Zynerba Pharmaceuticals, Inc. ("Zynerba), Armando Anido, and James E. Fickenscher (collectively, "Defendants"), asserting various claims for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission.  Specifically, Plaintiffs alleged that during the Settlement Class Period, Zynerba conducted Phase II clinical testing of Zygel to assess its efficacy and safety for treatment of child and adolescent patients with developmental and epileptic encephalopathies via a clinical trial called the "BELIEVE 1" trial.  Zygel is a transdermal cannabinoid-based treatment, and Zynerba's only product in development.  In the amended complaint, Plaintiffs alleged that Defendants knew about but failed to timely disclose adverse events experienced by participants during the BELIEVE 1 trial.  When this material information was reported on September 18, 2019, Zynerba's stock price fell $2.46 per share (21.77%).

From the outset of this litigation, Defendants have denied any wrongdoing and vigorously defended this action.  Initially, Defendants filed a motion to dismiss, which this Court granted, in part, and denied, in part.  Defendants filed a motion for reconsideration, which this Court denied. After Defendants file an answer to the amended complaint, the parties participated in a full-day mediation with a private mediator.  The parties reached an agreement in principle, which was eventually memorialized in a settlement agreement on April 30, 2021.

**The Terms of the Settlement**

The Settlement, the full terms of which are set forth in the Settlement Agreement, provides substantial economic benefits to the certified class (the "Class").[1]  The Settlement creates a total settlement fund of $4.0 million (the "Settlement Fund"), to be reduced by any amount approved by this Court for attorneys' fees and costs, and for the class representative service awards.

<b>Preliminary Approval and Class Notice</b>

By Order dated May 12, 2021, this Court granted preliminary approval to the proposed Settlement and provisionally certified the proposed class.  Pursuant to this Court's Preliminary Approval Order, Strategic Claims Services ("SCS") was appointed to serve as the Settlement Administrator.  As part of its responsibilities, SCS sent notice to the relevant governmental officials under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715, *et seq.*, effected publication notice, and sent direct notice to Class Members in accordance with the plan for notice, which this Court found to be the best notice practicable under the circumstances and consistent with the requirements of due process.  SCS mailed notices to thirty-seven (37) individuals and organizations identified in the transfer agent records.  SCS also mailed a letter to 1,224 nominees contained in its proprietary master mailing list, which notified the recipients of the settlement and requested that within ten (10) calendar days that they either:  (a) send a postcard notice to their customers who may be beneficial purchasers/owners; (b) email either an electronic version of the Summary Notice of Pendency and Proposed Settlement of Action and Final Approval Hearing ("Publication Notice") or a direct link to the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing ("Long Notice") and Proof of Claim and Release Form ("Claim Form") supplied by SCS to their beneficial purchasers/owners; or (c) provide SCS with a list of the names, mailing addresses, and email

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Settlement Agreement.

addresses, to the extent email addresses were available, of such beneficial owners so that SCS could promptly mail the Postcard Notice or email the links to the Long Notice and Claim Form directly to them.  As a result of this notice procedure, SCS mailed 24,807 Postcard Notices.  In addition, Certain Nominee Account Holders notified SCS that they collectively emailed 15,805 potential Settlement Class Members to notify them of the Settlement and provide either the Publication notice or direct links to the Long Notice and Claim form on the Settlement webpage. SCS also sent the Depository Trust Company a Long Notice and Claim Form to post on its Legal Notice system and arranged for the Publication Notice to be published electronically once on the *GlobeNewswire* and in print in the *Investor's Business Daily*.

The deadline for filing objections and requests for exclusion was August 10, 2021.  As of the date of the Fairness Hearing, there were no objections, and only two (one invalid) requests for exclusion.

**DISCUSSION**

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).  Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement.  *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).  "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995).  In addition to conservation of judicial

resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the United States Court of Appeals for the Third Circuit (the "Third Circuit") set forth factors (often called the "*Girsh* factors") that a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are the following:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). No one factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011). Further, a "court may approve a settlement even if it does not find that each of [the *Girsh*] factors weighs in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms." *See also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). The *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1)  the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and

> other factors that bear on the ability to assess the probable outcome
> of a trial on the merits of liability and individual damages;
> (2)  the existence and probable outcome of claims by other classes
> and subclasses;
> (3)  the comparison between the results achieved by the settlement
> for individual class or subclass members and the results achieved or
> likely to be achieved for other claimants;
> (4)  whether class or subclass members are accorded the right to opt-
> out of the settlement;
> (5)  whether any provisions for attorneys' fees are reasonable; and
> (6)  whether the procedure for processing individual claims under
> the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350.  Only the *Prudential* factors relevant to the litigation in question need be addressed.  *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and the relevant *Prudential* factors in its review of the proposed class action settlement.

### *Girsh* Factors

#### *1. The complexity, expense, and likely duration of the litigation*

This case raised significant and complex factual and legal questions regarding Defendants' purported omissions and/or misrepresentations in SEC filings regarding a pharmaceutical product in development.  Needless to say, had the Settlement not been reached, this matter would likely have proceeded to trial on the issues of liability and determination of damages.  The continued prosecution of Plaintiffs' claims against Defendants would have required significant additional expense to the Class, including additional discovery and the employment of experts, resulting in a substantial delay before any potential recovery.  Further, no matter the outcome of dispositive motions or a trial, it is likely that one or all of the parties would have appealed, leading to further litigation costs and delay in any realized recovery.  Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties and weighs in favor of approving the settlement.  *See In*

*re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

## 2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc*., 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, Defendants identified more than 24,000 individuals who meet the Class definition. Those individuals identified as potential Class members were mailed and/or emailed notices and Class forms. As of the date of the final approval hearing, no Class Member had objected to the terms of the proposed settlement or the request for attorneys' fees, and only two persons requested exclusion. This factor is persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35.

## 3. *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case

at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement. Although the parties had not completed discovery, Plaintiffs' counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the settlement. By the time the settlement was reached, Plaintiffs' counsel had: (1) reviewed and analyzed Class Period and pre-Class Period public filings, annual reports, press releases, quarterly-earnings-call and industry-conference transcripts, and other public statements; (2) reviewed and analyzed stock trading data relating to the Company as well as analyst reports and major financial news service reports; (3) consulted with experts; (4) drafted the initial complaint and an amended complaint to comply with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (5) researched and drafted an opposition to Defendants' motion to dismiss and subsequent motion for reconsideration; (6) prepared for and engaged in a mediation; and (7) negotiated the final terms of the settlement. As a result of these pre-settlement efforts, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

### 4. The risks of establishing liability

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319. This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *Wallace v. Powell*, 288 F.R.D. 347, 369 (M.D. Pa. 2012) (quoting *Prudential II*, 148 F.3d at 319).

In this case, the outcome of this matter with respect to liability is far from certain. Defendants have denied any liability throughout this litigation. The proposed settlement avoids the risk that Defendants be found not liable. Thus, this Court finds that this factor weighs in favor of approval.

### 5. The risks of establishing damages

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential II*, 148 F.3d at 319. In *Warfarin Sodium I*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *In re Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury

confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant and, thus, the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239.  The same is likely true here.  Accordingly, this factor weighs in favor of approval.

### 6.  The risks of maintaining the class action through trial

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class action]," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial.  As noted above, this action has been vigorously litigated by both sides from the outset.  As such, it is likely that the issue of class certification would have been the subject of vigorous dispute.  Further, even if class certification were granted in this matter, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative."  *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, 2016 WL 4033969, at *15 (D. N.J. July 26, 2016).  Accordingly, this factor weighs in favor of approval.

### 7.  The ability of defendants to withstand a greater judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement."  *In re Cendant*, 264 F.3d at 240.  Here, a significant source of the settlement proceeds is Zynerba's directors' and officers' liability insurance policies, which continued litigation would have dissipated.  Zynerba has no FDA approved products generating revenue, and Zygel is the only product in Zynerba's pipeline.  Zygel has not been approved by the FDA and, therefore, has not been commercialized.  The Company has no revenue. Accordingly, there is significant risk that Zynerba could not have withstood a greater judgment. This factor favors approval.

*8-9.  The range of reasonableness of settlement in light of best*
*possible recovery and all attendant risks of litigation*

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case.  *In re Warfarin*, 391 F.3d at 538.  In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."  *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  Here, the Class is receiving a significant settlement amount that offers real and immediate economic benefits to Class Members.  The $4,000,000 cash settlement represents approximately 10.4% of estimated damages and is well above similar average settlements in securities litigation.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re PNC*, 440 F. Supp. At 435-36 (approving settlement amount that represented 12% of estimated losses because it "constitute[d] a very reasonable range of settlement when compared to the best possible recovery discounted by the attendant risks of proceeding to trial").  As previously noted, the expense of a trial and use of the parties' resources would have been substantial, especially in conjunction with the post-trial motions and appeals that would have likely followed a trial on the merits.  Thus, a settlement is advantageous to all parties.  Therefore, these factors weigh in favor of approval.

### Relevant *Prudential* Factors

*1.  Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a relatively mature point in the proceedings. As discussed above, Class Counsel obtained and reviewed substantial documentation prior to commencing this action and the parties fully litigated Defendants' motion to dismiss and motion for reconsideration. In addition, the parties participated in a successful private mediation. As such, the litigants were in a position to fully evaluate the strengths, weaknesses, and merits of their case. The advanced development of the record weighs in favor of approval. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

> 2. *Results achieved by settlement for individual class members versus
>    the results achieved—or likely to be achieved—for other claimants*

This factor weighs in favor of approval since only two class members elected to be excluded and most Settlement Class Members will receive Settlement benefits automatically without having to take any further action.

> 3. *Whether class or subclass members are afforded the right to opt out of the settlement*

As part of the Class notice process approved by this Court, Settlement Class Members were provided robust notice and the opportunity to file objections to the Settlement and/or requests for exclusion. No members filed any objections, and only two members filed requests for exclusion. Thus, this factor weighs in favor of approval.

> 4. *Whether any provisions for attorneys' fees are reasonable*

As part of the Class notice process approved by this Court, Class members were advised that Plaintiffs would seek an award of attorneys' fees of up to one-third of the settlement amount. For the reasons discussed in greater detail below, the attorneys' fees and expenses sought and agreed to in this case are reasonable. Thus, this factor weighs in favor of approval.

*5. Whether the procedure for processing individual claims under
the class action settlement is fair and reasonable*

The claims processing procedures put in place by the Settlement are fair and reasonable. The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based upon each Authorized Claimant's Recognized Loss attributable to the alleged fraud. Such *pro rata* distributions are consistently utilized and upheld. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011). This factor supports approval of the settlement.

In summary, in light of the presumption of fairness that attaches to the Settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

**Class Certification**

As noted, by Order dated May 12, 2021, this Court provisionally certified the following proposed class:

> all Persons (including, without limitation, their beneficiaries) who purchased or otherwise acquired Zynerba securities from March 11, 2019 through September 17, 2019, both dates inclusive. Excluded from the Class are (i) the Defendants; (ii) the officers and directors of Zynerba during the Class Period; (iii) the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons; (iv) any entity in which any Defendant has or had a controlling interest during the Settlement Class Period; and (v) all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

Although this Court previously certified the Class, it must again determine whether class certification is appropriate under Rule 23. *In re Prudential*, 148 F.3d at 308.

A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568

U.S. 455, 465 (2013); *see also Marcus v. BMW of North America*, 687 F.3d 583, 590 (3d Cir. 2012). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.*, 568 U.S. at 465-66 (quoting *Wal-Mart*, 564 U.S. at 351). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id*. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

To satisfy the Rule 23(a) requirements:

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus*, 687 F.3d at 590-91 (citations omitted).

Here, Plaintiffs seek certification of the proposed class, as provisionally certified, pursuant to Rule 23(b)(3). This Rule permits certification when the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*Rule 23(a) Requirements*

### 1. *Numerosity*

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes*, 725 F.3d at 357. "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id.*

Here, Zynerba's common stock was listed on the NASDAQ with an average of over 21 million shares of common stock outstanding. Courts generally presume that the numerosity requirement has been satisfied "when a class action involves a nationally traded security." *In re Cigna Corp. Sec. Litig.*, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006). In addition, more than 24,000 potential class members have been identified. Given the number and likely geographic distribution of the Settlement Class Members, joinder of all Settlement Class Members would be impracticable. Thus, the proposed Settlement Class satisfies Rule 23's numerosity requirement for settlement purposes. *Liberty Lincoln Mercury Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993).

### 2-3. *Commonality and Typicality*

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed. R. Civ. P. 23(a)(2). Under

the Rule, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 350.  It "does not require identical claims or facts among class member[s]." *Marcus*, 687 F.3d at 597 (citations omitted).  "For purposes of Rule 23(a)(2), even a single common question will do." *Id*.  Claims common to the entire class "must depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution . . . [and] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

Under Rule 23(a)(3), a court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality and commonality are closely related and often merge.  *Marcus*, 687 F.3d at 597. Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id*. at 598. "If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id*.

Typicality ensures that the putative class members' and the representative's interests "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [his or her] own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations omitted).  Typicality is met "when the named plaintiffs and the proposed class members 'challenge [] the same unlawful conduct." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).  Complete "factual similarity is not required; just enough factual similarity so that

maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

Here, a single overarching common question—whether Defendants omitted material information and/or made misrepresentations that inflated the price of Zynerba's stock—cuts across every claim of every Settlement Class Member. *Rodriquez v. Nat'l City Bank*, 726 F.3d 372, 832 (3d Cir. 2013) ("[T]here may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant."). As such Rule 23(a)(2) and (3)'s requirements of common question of law or fact and typicality are satisfied.

### 4.  Adequacy

Under Rule 23(a)(4), a court must determine whether the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement, a finding must be made that (1) plaintiff's interests do not "conflict with those of the class" and (2) the proposed class counsel are "capable of representing the class." *Newton*, 259 F.3d at 185. The Third Circuit has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012), and "not proof of vigorous pursuit of the claim." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 307 (3d Cir. 2005). This requirement serves "to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously." *Dewey*, 681 F.3d at 184.

Here, there is no conflict between the proposed Class Representatives and the Class because, as with all members of the Class, Plaintiffs seek compensation for the same claims from the same Defendants. Plaintiffs have no interests that are antagonistic to or in conflict with the

Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class Members. In addition, Class Counsel have substantial experience prosecuting large-scale class actions, including class actions involving securities claims. Accordingly, both prongs of the adequacy inquiry are met.

*Rule 23(b)(3) Requirements*

Having found that Plaintiffs have satisfied each of the Rule 23(a) prerequisites, this Court must determine pursuant to Rule 23(b) whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These two requirements are generally referred to as the "predominance and superiority" factors.

*1. Predominance*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Issues common to the class must "predominate" over individual issues. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998). "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *In re Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

The predominance requirement is met here. Plaintiffs allege that each Settlement Class member purchased Zynerba stock in reliance on the same alleged misrepresentations and/or

omissions in Zynerba's SEC filings.  As such, common questions of law and fact predominate over individual issues.

### 2.  Superiority

Under the second criterion of Rule 23(b), this Court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).  The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'"  *Community Bank of Northern Virginia*, 418 F.3d at 309 (citations omitted).  A "nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority requirement is found in the text itself.  *Amchem*, 521 U.S. at 615-16.  The list includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  The superiority inquiry is simplified in the settlement context, because when certifying a settlement only class, the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial.  *Amchem*, 521 U.S. at 620.  In making this analysis, the district court may take the proposed settlement into consideration.  *Prudential II*, 148 F.3d at 308; *Warfarin Sodium II*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

Here, a class action is the superior method of resolving the Settlement Class Members' claims. All of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards. It would be a far better use of judicial resources to adjudicate all of these identical issues once, on a common basis. In addition, the Settlement provides Settlement Class Members the ability to obtain predictable, certain, and definite compensatory relief promptly. By contrast, individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that injured Settlement Class Members will obtain timely compensatory relief at the conclusion of the litigation. Accordingly, this Court finds that consideration of the Rule 23(b) factors weighs favorably for certification. Because of the number and nature of potential class plaintiffs and the fact that each member's potential recovery is likely to be small compared to the cost of litigating an individual case, maintaining this matter as a class action is judicially advisable and superior to other available methods.

After carefully concluding the requisite "vigorous analysis" of the factors in Rules 23(a) and (b), this Court finds that the requirements of Rule 23 have been met and that certification of Plaintiffs' proposed class is proper.

### Request for Attorneys' Fees and Expenses

As compensation for their legal services and efforts, Class Counsel have requested that this Court approve the portion of the settlement that provides for reimbursement of attorneys' fees in an amount equal to one-third of the total settlement amount, or $1,333,333.00, and litigation expenses in the amount of $37,259.11. This amount was contemplated and agreed to in the Settlement Agreement and disclosed to Class Members. The notice provided to potential Class Members expressly informed them that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the total settlement amount, reimbursement of costs, and

a $7,500.00 service award for each of the two Class Representatives in recognition of their services as class representatives.  To date, no Class Member has objected to the terms of the Settlement, including the provisions for attorneys' fees and costs and class representative awards.  In support of their request for fees and reimbursement of costs and expenses, counsel rely upon two declarations of counsel summarizing their time and the expenses incurred on behalf of the Class. (*See* Decls. of Tamar A. Weinrib and Jacob Goldberg).

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  "[A] thorough judicial review of fee applications is required in all class action settlements.  *Gen. Motors*, 55 F.3d at 819.  Awarding fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous.  *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001).

### *Attorneys' Fees*

There are two methods of calculating attorneys' fees in class actions—the percentage-of-recovery method and the lodestar method.  *In re Prudential*, 148 F.3d at 332-33.  The percentage-of-recovery approach "applies a certain percentage to the settlement fund," while the lodestar method "multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services."  *Sullivan v. DB Inv. Inc.*, 667 F.3d 273, 330 (3d Cir. 2011).  The percentage-of-recovery approach is more appropriate where, as here, there is a common fund.  *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (finding that the percentage method is "generally favored" in common fund cases because "it allows courts to award fees from the fund

in a manner that rewards counsel for success and penalizes it for failure."); *Harshbarger v. Penn Mut. Life Ins. Co.*, 2017 WL 6525783, at *2 (E.D. Pa. Dec. 20, 2017) ("The reasonableness of attorneys' fee awards in common fund cases . . . is generally evaluated using a [percentage of recovery] approach followed by a lodestar cross-check.").

In determining what constitutes a reasonable award under the percentage-of-recovery approach, the Third Circuit has directed district courts to consider the ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (the "*Gunter/Prudential* factors"); *to wit*:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement.

*Gunter*, 223 F.3d at 195 n.1; *see also Prudential*, 148 F.3d at 336-40; *Diet Drugs*, 582 F.3d at 541. Although district courts should "engage in robust assessments of the [*Gunter/Prudential* factors] when evaluating a fee request," these factors are not exhaustive and should not be applied in a formulaic way. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301-02 (3d Cir. 2005). This Court will apply each factor to determine the reasonableness of the attorneys' fees request.

### 1. The size of the fund created and the number of persons benefitted

The first *Gunter* factor "consider[s] the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *26 (D.N.J. Nov. 15, 2016) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*,

2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).  Here, the parties negotiated a settlement with a common fund of $4 million, which represents a 10.4% recovery of estimated, alleged damages. This percentage recovery exceeds the median recovery for similar securities class actions in 2020. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class action Settlements:  2020 Review and Analysis* (Cornerstone Research 2021); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re AT&T Corp.*, 455 F.3d 160, 169 (3d Cir. 2006) (affirming settlement for 4% of total damages).  This factor supports approval of the requested fees.

### 2.  The presence or absence of substantial objections by members of the class

*Gunter* advises that a court should consider "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." *Gunter*, 223 F.3d at 195 n.1.  More than 24,000 potential Class members were provided notice of the settlement, which included notice of the agreed upon attorneys' fees, expenses, and class representative service awards.  No objections to the Settlement were filed.  The lack of any objections is strongly indicative of approval by the Class.  Accordingly, this factor weighs in favor of approved of the requested fees.

### 3.  The skill and efficiency of the attorneys involved

Class Counsel's skill and efficiency is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel."  *In re Viropharma Inc. Secur. Litig.*, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (quoting *In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).  Here, Class Counsel have substantial experience prosecuting large-scale

class actions, including securities class actions like the case *sub judice*.  This experience undoubtedly contributed to the favorable outcome negotiated with equally experienced opposing counsel.  Therefore, this factor also weighs in favor of approval.

### 4. The complexity, expense, and likely duration of the litigation

The fourth *Gunter* factor is intended to capture "the probable costs, in both time and money, of continued litigation."  *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974)).  Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, often requiring expert testimony on questions of causation and damages.  *See, e.g., In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at 84 (D. N.J. July 29, 2013) ("Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate.").

As noted, the claims in this action have been the subject of hard-fought litigation since its commencement.  Notwithstanding the parties' progress in this matter prior to reaching settlement, if this case were to go to trial, it would involve substantial additional discovery and motion practice at great expense to the parties.  Moreover, even if Plaintiffs would have recovered a larger judgment at trial on behalf of the Settlement Class Members, their actual recovery would have likely been postponed for years.  There is also the possibility that Plaintiffs would not have recovered anything.  The Settlement Agreement secures a recovery for the Settlement Class now, rather than the "speculative promise of a larger payment years from now."  *In re Viropharma Inc.*, 2016 WL 312108, at *16.  This factor, therefore, weighs in favor of approval.

### 5. The risk of non-payment

Class Counsel undertook this action on an entirely contingency fee basis.  "Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in

favor of approval." *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. 2012); *see also In re Ocean Power Techs, Inc.*, 2016 WL 677218, at *28.  Class Counsel has litigated this case without pay from the inception and has shouldered the risk that the litigation would yield little-to-no recovery.  Accordingly, the fifth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 6. The amount of time devoted to the case by plaintiff's counsel

The sixth *Gunter/Prudential* factor considers the amount of time Class Counsel devoted to the litigation.  *Gunter*, 223 F.3d at 199.  Class Counsel estimates that over 800 hours of attorney and other professional and paraprofessional time were expended on this case.  These hours are reasonable for a complex class case such as this.[2]  Thus, the sixth *Gunter/Prudential* factor weighs in favor of approving the attorneys' fees request.

### 7. The awards in similar cases

While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund.  *In re Gen. Motors*, 55 F.3d at 822.  The requested fee here falls in the middle of the range of fees that have been granted in comparable securities class actions in the Third Circuit.  *See, e.g., Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D. N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement).  Accordingly, this factor weighs in favor of approval.

### 8. Value of benefits attributable to the efforts of class counsel relative to the efforts of others

---

[2]         The hours expended in this case are further discussed in the lodestar crosscheck below.

Class Counsel were the only ones investigating the claims at issue in this case, and they alone initiated and actively litigated this federal action. Because Class Counsel were the only attorneys pursuing the claims at issue in this case, this factor weighs in favor of approval.

### 9. *Percentage fee that would have been negotiated*

Class Counsel agreed to litigate this case on a contingency fee basis and successfully negotiated a settlement. Were this case brought on behalf of an individual, the customary contingency fee would likely range between thirty and forty percent of the recovery. *Wallace v. Powell*, 288 F.R.D. 347, 375 (M.D. Pa. 2012) ("In private contingency fee cases, attorneys routinely negotiate agreements for between thirty percent and forty percent of the recovery."); *In re Ikon Ofc. Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). Here, Class Counsel's requested percentage is commensurate with customary percentages in private contingency fee agreements. Thus, this factor supports approval.

### 10. *Innovative terms of the settlement*

The Settlement Agreement does not contain any innovative terms. This factor is neutral as it neither weighs in favor of, nor against, approval.

### ***Lodestar Cross-Check***

In common fund cases such as this one, the lodestar method is sometimes used to "cross-check the reasonableness of a percentage-of-recovery fee award." *Sullivan*, 667 F.3d at 330. The purpose of the cross-check is to ensure that the percentage approach does not result in an "extraordinary" lodestar multiple or a windfall. *See In re Cendant*, 264 F.3d at 285. The Third Circuit has stated that a lodestar cross-check entails an abridged lodestar analysis that requires

neither "mathematical precision nor bean counting." *In re Rite Aid*, 396 F.3d at 305. The Court need not receive or review actual billing records when conducting this analysis. *Id*. at 307.

Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar," *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). Once the lodestar is determined, the court must then decide whether additional adjustments are appropriate. *McKenna*, 582 F.3d at 455. A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Pub. Interest Research Grp. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

"In calculating the second part of the lodestar determination," *i.e.*, the time reasonably expended, a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive, redundant, or otherwise unnecessary" hours. *Id*. at 434. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id*. at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

Attached to the Weinrib and Goldberg Declarations, Class Counsel included a summary of the hours worked by the partners, associates, and professional support staff involved in this litigation. These summaries were prepared from contemporaneous, daily time records that are regularly prepared and maintained by the respective firms. Class Counsel and support staff are claiming 862.99 hours for work done at hourly rates ranging from $110 to $1,100. After reviewing the Attorney Declarations, it appears that Class Counsel is not requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. These hourly rates are also well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys are the same as the regular current rates charged for their services in standard non-class matters, including contingent and non-contingent matters. The attorneys have substantial experience in complex class action litigation, and their hourly rates are within the range charged by attorneys with comparable experience levels for litigation of a similar nature.

Having found the hourly rates and hours expended to be reasonable, the aggregate lodestar calculation, as of July 27, 2021, is $679,844 for the 862.99 hours of attorney and support staff work. Class Counsel's request for $1,333,333 (one-third of the settlement amount) will result in Class Counsel receiving approximately 1.96 times the lodestar. Courts frequently approve attorneys' fees awards for amounts in excess of the calculated lodestar. Indeed, multiples ranging from 1 to 8 are often used in common fund cases. *See In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005) (approving a 6.96 multiplier); *Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (holding a 6.85 multiplier "falls well within the range of multipliers that courts have allowed"); *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014) ("Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even

higher multipliers."). Such multipliers are necessary to compensate counsel for the risk of assuming the representation on a contingency fee basis. *City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974). Moreover, Class Counsel is expected to perform additional work in connection with this case following this Court's approval. As such, the multiplier will likely be lower by the time this matter is closed and Class Counsel's work is completed.

Therefore, having considered the relevant *Gunter/Prudential* factors and performed the lodestar cross-check, this Court approves the reasonable amount of attorneys' fees requested.

### *Reimbursed Litigation Expenses*

Class Counsel also seeks approval of the portion of the Settlement Agreement which entitles them to reimbursement of their litigation expenses. Courts recognize that "'[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund.'" *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000)).

Class Counsel claims that they incurred $37,259.11 in such expenses during the pendency of this litigation. This amount includes filing fees and fees for the mediation, legal and factual research, an investigator, and other incidental expenses incurred in the course of the litigation. After carefully reviewing the documentation supporting the reimbursement request, this Court finds that the litigation and administrative expenses listed by Class Counsel are reasonable and expected in this type of case. In addition, the Notice to Class Members advised that Plaintiffs' Counsel may seek reimbursement of expenses not to exceed $125,000. Accordingly, this Court finds the request for reimbursement of $37,259.11 reasonable.

### *Service Award*

Class Counsel also seek this Court's approval of a service award, in the amount of $7,500, to each of the two Class Representatives, for their willingness to undertake the risks and the burden as a class representative in this litigation. "Incentive awards are not uncommon in class action litigation[.]" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation[.]" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (internal citations and quotations omitted). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id*. (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to the Settlement Class Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution. In doing so, Mr. Whiteley and Mr. Berger devoted time and energy to the litigation, including assisting Class Counsel with discovery and mediation. The requested award is well within the range of awards made in similar cases. *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 402-03 (E.D. Pa. Jan. 16, 2009) (awarding $10,000.00 incentive award); *Brown v. Progressions Behavioral Health Servs., Inc.*, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (awarding $10,000 to each named plaintiff because they "were actively involved in the litigation since before it was commenced, they provided the information and documents that formed the basis for the lawsuit" and "the service award payments represent a small fraction of the $452,586 Settlement Fund."). Settlement Class Members were also notified that Class Counsel would request these individual awards for each of the Class Representatives. Notably, no Settlement Class Member objected to the proposed service awards. Accordingly, this Court approves the requested award of $7,500.00 to each of the Class Representatives.

**CONCLUSION**

For the reasons stated herein, this Court:  (1) grants final approval of the proposed class action settlement; (2) awards Class Counsel reasonable attorneys' fees in the amount of $1,333,333.00 and the reimbursement of litigation and administrative expenses in the amount of $37,259.11; and (3) awards the sum of $7,500.00 to each of the Class Representatives.  An Order consistent with this Memorandum Opinion follows.


*NITZA I. QUIÑONES ALEJANDRO, J*